EXHIBIT "A"

## ASSUMPTION, ASSIGNMENT AND AMENDMENT OF LEASE AGREEMENT

THIS ASSUMPTION, ASSIGNMENT AND AMENDMENT OF LEASE AGREEMENT (this "Agreement") is made as of this 24th day of October, 2014, by and among 8 West 58th Street Hospitality, LLC (the "Debtor"), Be My Guest, LLC (the "Assignee"), and 14 East 58th LLC (the "Landlord," and together with the Debtor and Assignee, each a "Party," and collectively, the "Parties").

WITNESSETH:

WHEREAS, on or about September 17, 2012, the Debtor entered in an Agreement of Lease (as amended, modified or supplemented from time to time, the "Lease") with Lawrence Friedland and the Estate of Melvin Friedland (collectively, "Friedland"), Landlord's predecessor-in-interest, for the premises located at 14 East 58th Street, New York, NY 10022 (the "Premises") (A copy of the Lease is attached hereto as Exhibit A and incorporated by reference herein);

WHEREAS, Friedland and Landlord entered into a certain Assignment and Assumption of Lease dated as of January 1, 2014, attached hereto as Exhibit B and incorporated by reference herein, pursuant to which Friedland assigned their right, title and interest in the Lease to Landlord;

WHEREAS, on or about March 18, 2014, Landlord commenced a commercial non-payment proceeding against the Debtor in the Civil Court for the City of New York as a result of the Debtor having defaulted on its fixed and additional rent obligations under the Lease (the "Non-Payment Proceeding");

WHEREAS, on May 20, 2014, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), and thereby commenced a chapter 11 case (Case No. 14-11524 (SHL)) (the "Chapter 11 Case") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in an effort to stay the Non-Payment Proceeding;

WHEREAS, on June 20, 2014, the Landlord filed a motion with the Bankruptcy Court seeking to compel the Debtor to immediately pay all post-petition obligations due under the Lease pursuant to sections 105(a) and 365(d)(3) of the Bankruptcy Code [Doc. No. 6] (the "Motion to Compel") and the Motion to Compel has been adjourned from time to time to allow the Parties to negotiate the terms of an assumption and assignment of the Lease;

WHEREAS, in connection with the Chapter 11 Case, the Bankruptcy Court entered a consent order [Doc. Nos. 21, 27] (as amended, the "Consent Order") that, among other things, required the Debtor to remit payment to the Landlord for certain post-petition rent arrears and set a deadline for the Debtor and Landlord to reach an agreement on the terms of an agreement to assume and assign the Lease;

WHEREAS, in accordance with the Consent Order, the Parties reached an agreement on the principle terms of an agreement to cure and resolve certain arrears due under the Lease and allow for the assumption and assignment of the Lease to the Assignee, and on September 19, 2014, the Debtor filed a motion with the Bankruptcy Court to assume and assign the Lease in

accordance with the terms agreed upon by the Parties pursuant to sections 365(a) and (f) of the Bankruptcy Code [Doc. No. 28] (the "Motion to Assume and Assign");

WHEREAS, on October 10, 2014, Landlord filed a proof of claim (assigned claim number 21) (the "Landlord Proof of Claim") asserting a claim against the Debtor for unpaid pre-petition rent and other charges due under the Lease in the total amount of $801,584.04 comprised of: (i) a general unsecured claim in the amount of $601,584.04, and (ii) a secured claim in the amount of $200,000.00 on account of a security deposit being by the Landlord pursuant to the Lease (the "Security Deposit"); and

WHEREAS, the Parties are desirous of having the Debtor assign to the Assignee, on the terms and conditions set forth herein, all of the Debtor's right, title and interest of any kind or nature in and to the Lease (as amended hereby) including, without limitation, the right to possession pursuant to sections 365(a) and (f) of the Bankruptcy Code.

NOW, THEREFORE, in consideration of the mutual covenants and obligations contained in this Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1.     Subject Matter of Assumption and Assignment. Pursuant to the terms and for the consideration set forth below, the Debtor hereby assumes the Lease with Landlord and assigns to Assignee all of the Debtor's right, title, and interest in and to the Lease for the remainder of the Lease term (the "Assignment") and Assignee hereby accepts the Assignment. Assignee hereby recognizes and acknowledges that Landlord's right to full performance of all terms, conditions, and covenants of the Lease, as amended by this Agreement, remains in effect on and after the Effective Date (as defined herein) of the Assignment. Except to the extent set forth in this Agreement or otherwise agreed in writing by Landlord, Assignee assumes and agrees to all of the terms, conditions, and covenants of the Lease as tenant under the Lease (including, but not limited to, the timely payment of Lease payments when due). The Security Deposit presently on account with Landlord will continue to be held as security for the Lease such that the Security Deposit shall not be returned by Landlord to the Debtor but may be refunded by Assignee to the Debtor. Landlord represents and warrants to the Assignee that, to the best of the Landlord's knowledge, and with the sole exception of Assignor's failure to pay rent (which is covered by the Chapter 11 Case) or any other breach of the Lease set forth in the Non-Payment Proceeding, if any, Assignee is not in breach of any term, condition, or covenant of the Lease as of the date of this Agreement, with such representation and warranty to be deemed to be in effect as of the Effective Date unless the Landlord gives written notice to the contrary to Assignee on or before the Effective Date.

2.     Consideration. In consideration for the Assignment from the Debtor to the Assignee, and in accordance with, *inter alia*, section 365(a) of the Bankruptcy Code, Assignee has agreed to pay the following amounts to Landlord to cure and satisfy all of Landlord's claims against the Debtor for all pre-petition and post-petition arrears owed under the Lease by Debtor as follows (collectively, the "Arrears Payment"):

(a)     within two (2) days of the Effective Date (as defined below) Assignee shall remit to Landlord by certified bank check or wire the amount of $255,000.00 (the "Upfront Payment"), comprised of (i) $195,000.00 on account of a portion of certain rent, tax and other charges arrears, and (ii) $60,000.00 on account of a portion of 2014-2015 real property taxes;

2

(b)     $441,532.25 on account of a portion of rent, taxes and other charges arrears payable over an eighteen (18) month period from November 2014 through April 2016, in equal installments of $24,529.57 by no later than the tenth (10th) day of each month of such period; and

(c)     $159,204.75 on account of a portion of 2014-2015 real property taxes payable over an eighteen (18) month period from November 2014 through April 2016, in equal installments of $8,844.71 by no later than the tenth (10th) day of each month of such period.

3.     <u>Conditions Precedent and Effective Date</u>. Unless otherwise expressly waived or agreed to in writing by Landlord, the effective date of this Agreement and the Assignment hereunder (the "<u>Effective Date</u>") shall be the date of the last to occur of each of the following conditions precedent (the "<u>Conditions Precedent</u>"):

(a)     the Assignee shall deliver to Landlord an executed personal guaranty of Nello Balan in form and substance acceptable to Landlord no later than 1:00 p.m. EST on October 27, 2014;

(b)     Assignee shall provide Landlord with documentary evidence no later than 1:00 p.m. EST on October 27, 2014, confirming that funds in the full amount of the Upfront Payment are on deposit in a New York bank account held by the Assignee or its counsel; and

(c)     an order of the Bankruptcy Court (an "<u>Approval Order</u>") has been entered approving the Motion to Assume and Assign and authorizing the Parties to enter into this Agreement and the Assignment hereunder.

If all of the foregoing Conditions Precedent (other than entry of the Approval Order) shall have occurred or been satisfied by the hearing date set for the Motion to Assume and Assign, then the Parties shall proceed with the hearing for approval of the Motion to Assume and Assign. In the event that any of the Conditions Precedent (other than entry of the Approval Order) have not occurred or been satisfied by the hearing date set for the Motion to Assume and Assign, this Agreement shall be deemed null and void and of no force and effect, the Parties shall revert to their pre-Agreement positions as if this Agreement had not been entered into, and the Motion to Compel shall be heard by the Bankruptcy Court and/or Landlord shall file an emergency motion with the Bankruptcy Court to reject the Lease. Any Approval Order of the Bankruptcy Court shall include a provision withdrawing and expunging the Landlord Proof of Claim. If all of the Conditions Precedent have occurred or been satisfied, then as soon as reasonably practicable after entry of an order of the Bankruptcy Court approving the Motion to Assume and Assign and authorizing the Parties to enter into this Agreement and the Assignment hereunder, Landlord shall withdraw the Non-Payment Proceeding, without prejudice. If the Effective Date does not occur, this Agreement shall be deemed null and void and of no force and effect such that the Parties shall revert to their pre-Agreement positions as if this Agreement had not been entered into and the Motion to Compel shall be renewed for hearing by the Bankruptcy Court and/or Landlord shall file an emergency motion with the Bankruptcy Court to reject the Lease.

4.     Free and Clear of Creditor Claims. Upon entry of an order approving the assumption and assignment contemplated by this Agreement, the Lease shall be free and clear of any and all claims of creditors of the Debtor, except claims of Landlord to the extent arising under or provided for under the Lease or this Agreement.

5.     Release of Debtor Liability. Subject to the conditions set forth herein, pursuant to section 365(f) of the Bankruptcy Code, on and after the Effective Date of the Assignment, the Debtor shall be relieved from any liability for any breach of the Lease occurring after the Effective Date of the Assignment, and Assignee agrees to indemnify and hold the Debtor and its estate harmless from any default in the performance of such terms, conditions and covenants occurring after the Effective Date of the Assignment. Additionally, on and after the Effective Date of the Assignment, Max Burgio is deemed released from his personal guaranty and will be substituted by Nello Balan.

6.     Amendments and Modifications to Lease. The following terms and/or provisions of the Lease shall be amended, modified or supplemented as follows:

(a)     The "Commencement Date" as defined in section 40(b) of the Lease shall be November 6, 2012.

(b)     The "Rent Commencement Date" as defined in section 42(b) of the Lease shall be September 7, 2013.

(c)     For the purposes of the Lease, the first (1st) Lease Year shall be December 1, 2012 through November 30, 2013. All subsequent Lease Years shall follow for each twelve (12) month period from the first (1st) Lease Year.

(d)     Both the Debtor and Assignee acknowledge and agree that the ten (10) month rent abatement under the lease shall only apply with respect to the annual fixed rent due under the Lease for the period November 6, 2012 through September 6, 2013, and no abatement shall apply during that period (or any other period) to any additional rent due under the Lease.

(e)     Both the Debtor and Assignee acknowledge and agreed that the Security Deposit under the Lease shall be in the amount of $200,000.00 and shall remain held by Landlord as security for the Lease.

7.     Use. Assignee shall use the Premises for such purposes as are authorized under the Lease or applicable law, including use of the Premises as a restaurant and Landlord shall not unreasonably withhold its consent to renovations of the Restaurant so long as they comply with applicable law and the terms of the Lease.

8.     Possession. Assignor agrees to provide Assignee with possession of the Premises on the Effective Date, subject only to an extension ordered by the Bankruptcy Court.

9.     Initial Rent. Upon the Effective Date, Assignee shall be responsible for, and shall pay, rent and other obligations and charges due under the Lease to Landlord in accordance with the terms of the Lease from and after the Effective Date (as well as any and all unpaid post-petition rent and other obligations and charges due from October 2014 through the Effective Date).

4

10. <u>General Provisions</u>

    10.1  <u>Notices</u>

    All notices or other communications required or permitted to be given under the terms of this Agreement, shall be in writing, delivered personally, or sent by certified mail, return receipt requested, or by overnight carrier with verification of receipt, addressed as follows:

    For Debtor:

    8 West 58th Street Hospitality, LLC
    c/o Goldberg Weprin Finkel Goldstein LLP
    Attn: Kevin J. Nash, Esq.
    1501 Broadway, 22nd Floor
    New York, New York 10036

    For Assignee:

    Be My Guest, LLC
    c/o Fox Horan & Camerini LLP
    Attn:  Rafael Urquia II, Esq.
    825 Third Avenue, 12th Floor
    New York, NY 10022

    For Landlord:

    14 East 58th LLC
    Attn: Eric Friedland
    c/o Larstrand Corporation
    22 East 65th Street - 5th Floor
    New York, NY 10065

    With Copy to:

    Brett D. Goodman, Esq.
    Troutman Sanders LLP
    The Chrysler Building
    405 Lexington Avenue
    New York, New York 10174

    10.2  <u>Execution of Other Documents.</u> The Parties agree, for themselves and their successors and assigns, to execute such other and further documents and to perform such other and further lawful acts as may be reasonably requested by each other to effectuate this Agreement.

23634932v6

10.3    Binding Effect. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, administrators, successors and assigns. The Parties agree that the authority to effectuate this Agreement and any further documents is subject to Bankruptcy Court approval.

10.4    Entire Agreement. This Agreement and any order of the Bankruptcy Court approving this Agreement shall constitute the complete express agreement of the Parties concerning the subject matter of this Agreement, and shall be deemed to supersede any prior understandings, agreements, or representations by or among the Parties, written or oral, to the extent they relate in any way to the subject matter of this Agreement (other than the Lease itself). No modification or amendment to this Agreement shall be valid unless it is in writing and signed by all of the Parties.

10.5    Participation In Drafting.    Each Party has participated in and jointly consented to the drafting of this Agreement, and that any claimed ambiguity shall not be construed for or against either Party on account of such drafting.

10.6.    Governing Law. This Agreement is governed by and shall be construed in accordance with the laws of the State of New York, without regard to its conflict-of-law provisions.

10.7.    Jurisdiction. The Bankruptcy Court shall retain jurisdiction to resolve any disputes or controversies arising from or related to the interpretation or enforcement of the Approval Order or the Assignment under this Agreement.

10.8.    Headings.    The section headings in this Agreement are intended only for convenience in finding the subject matter and do not constitute part of the text of this Agreement and shall not be considered in the interpretation of this Agreement or any of its provisions.

10.9.    Counterparts. This Agreement may be executed in counterparts, any of which may be transmitted by facsimile or electronic mail, and each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

[SIGNATURE PAGE TO FOLLOW]

23634932v6

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the day and year first above written.

8 West 58th Street Hospitality LLC,
the Debtor as Assignor:

By: _____ 10/23/14
Max Burgio
Managing Member

Be My Guest, LLC
as Assignee:

By:_____
Nello Balan
Manager

14 East 58th LLC
as Landlord:

By:_____
Eric Friedland
Manager

7

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the day and year first above written.

8 West 58th Street Hospitality LLC,
the Debtor as Assignor:

By:_____
      Max Burgio
      Managing Member


Be My Guest, LLC
as Assignee:

By:_____
      Lucy Balan
      Manager


14 East 58th LLC
as Landlord:

By:_____
      Eric Friedland
      Manager

23634932v6

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the day and year first above written.

8 West 58th Street Hospitality LLC,
the Debtor as Assignor:

By:_____
        Max Burgio
        Managing Member

Be My Guest, LLC
as Assignee:

By:_____
        Nello Balan
        Manager

14 East 58th LLC
as Landlord:

By:_____
        Eric Friedland
        Manager

7

## EXHIBIT A

## STANDARD FORM OF STORE LEASE
### The Real Estate Board of New York, Inc.

**Agreement of Lease**, made as of this _____ day of August, 2012, between LAWRENCE FRIEDLAND and ESTATE OF MELVIN FRIEDLAND, each having an address at 22 East 65th Street, New York, New York 10065,

party of the first part, hereinafter collectively referred to as OWNER, and

**8 W 58 ST HOSPITALITY LLC,**

party of the second part, hereinafter referred to as TENANT,

**Witnesseth:** Owner hereby leases to Tenant and Tenant hereby hires from Owner

the building known as 14 East 58th Street in the Borough of Manhattan , City of New York, for the term as provided in Article 41 (or until such term shall sooner cease and expire as hereinafter provided), at an annual rental rate as provided in Article 42

which Tenant agrees to pay in lawful money of the United States which shall be legal tender in payment of all debts and dues, public and private, at the time of payment, in equal monthly installments in advance on the first day of each month during said term, at the office of Owner or such other place as Owner may designate, without any set off or deduction whatsoever

In the event that, at the commencement of the term of this lease, or thereafter, Tenant shall be in default in the payment of rent to Owner pursuant to the terms of another lease with Owner or with Owner's predecessor in interest, Owner may at Owner's option and without notice to Tenant add the amount of such arrears to any monthly installment of rent payable hereunder and the same shall be payable to Owner as additional rent.

The parties hereto, for themselves, their heirs, distributees, executors, administrators, legal representatives, successors and assigns, hereby covenant as follows:

**Rent:** 1. Tenant shall pay the rent as above and as hereinafter provided.
**Occupancy:** 2. Tenant shall use and occupy demised premises as provided in Article 32 and for no other purpose. Tenant shall at all times conduct its business in a high grade and reputable manner, shall not violate Article 37 hereof, and shall keep show windows and signs in a neat and clean condition.

**Alterations:** 3. Tenant shall make no changes in or to the demised premises of any nature without prior written consent. Subject to the prior written consent of Owner, and to the provisions of this article, Tenant, at Tenant's expense, may make alterations, installations, additions or improvements which are non-structural and which do not affect utility services or plumbing and electrical lines, in or to the interior of the demised premises by using contractors or mechanics first approved in each instance by Owner. Tenant shall, before making any alterations, additions, installations or improvements, at its expense, obtain all permits, approvals and certificates required by any governmental or quasi-governmental bodies and (upon completion) certificates of final approval thereof and shall deliver promptly duplicates of all such permits, approvals and certificates to Owner and Tenant agrees to carry and will cause Tenant's contractors and sub-contractors to carry such workman's compensation, general liability, personal and property damage insurance as Owner may require. If any mechanic's lien is filed against the demised premises, or the building of which the same forms a part, for work claimed to have done for, or materials furnished to, Tenant, whether or not done pursuant to this article, the same shall be discharged by Tenant within 30 days thereafter, at Tenant's expense, by payment or filing the bond required by law. All fixtures and all panelling, partitions, railings and like installations, installed in the premises at any time, either by Tenant or by Owner on Tenant's behalf, shall, upon installation, become the property of Owner and shall remain upon and be surrendered with the demised premises unless Owner, by notice to Tenant no later than twenty days prior to the date fixed as the termination of this lease, elects to relinquish Owner's rights thereto and to have them removed by Tenant, in which event the same shall be removed from the premises by Tenant prior to the expiration of the lease, at Tenant's expense. Nothing in this article shall be construed to give Owner title to or to prevent Tenant's removal of trade fixtures, moveable office furniture and equipment, but upon removal of any such from the premises or upon removal of other installation as may be required by Owner, Tenant shall immediately and at its expense, repair and restore the premises to the condition existing prior to installation and repair any damage to the demised premises or the building due to such removal. All property permitted or required to be removed by Tenant at the end of the term remaining in the premises after Tenant's removal shall be deemed abandoned and may, at the election of Owner, either be retained as Owner's property or may be removed from the premises by Owner at Tenant's expense.

**Repairs:** 4. Tenant shall, throughout the term of this lease, take good care of the demised premises and the fixtures and appurtenances therein, and the sidewalks adjacent thereto, and its pipes and vault portions, make all non-structural repairs thereto as and when needed to preserve them in good working order and condition, reasonable wear and tear, obsolescence and damage from the elements, fire or other casualty,

excepted. If the demised premises be or become infested with vermin, Tenant shall at Tenant's expense, cause the same to be exterminated from time to time to the satisfaction of Owner. Except as specifically provided in Article 9 or elsewhere in this lease, there shall be no allowance to the Tenant for the diminution of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner, Tenant or others making or failing to make any repairs, alterations, additions or improvements in or to any portion of the building including the erection or operation of any crane, derrick or sidewalk shed, or in or to the demised premises or the fixtures, appurtenances or equipment thereof. It is specifically agreed that Tenant shall be not entitled to any set off or reduction of rent by reason of any failure of Owner to comply with the covenants of this or any other article of this lease. Tenant agrees that Tenant's sole remedy at law in such instance will be by way of an action for damages for breach of contract. The provisions of this Article 4 with respect to the making of repairs shall not apply in the case of fire or other Casualty which are dealt with in Article 9 hereof.

**Window Cleaning:** 5. Tenant will not clean nor require, permit, suffer or allow any window in the demised premises to be cleaned from the outside in violation of Section 202 of the New York State Labor Law or any other applicable law or of the Rules of the Board of Standards and Appeals, or of any other Board or body having or asserting jurisdiction.

**Requirements of Law, Fire Insurance:** 6. Prior to the commencement of the lease term, if Tenant is then in possession, and at all times thereafter, Tenant, at Tenant's sole cost and expense, shall promptly comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards and any direction of any public officer pursuant to law, and all orders, rules and regulations of the New York Board of Fire Underwriters or the Insurance Services Office, or any similar body which shall impose any violation, order or duty upon Owner or Tenant with respect to the demised premises, and with respect to the portion of the sidewalk adjacent to the premises, if the premises are on the street level, whether or not arising out of Tenant's use or manner of use thereof, or with respect to the building if arising out of Tenant's use or manner of use of the premises or the building (including the use permitted under the lease). Except as provided in Article 29 hereof, nothing herein shall require Tenant to make structural repairs or alterations unless Tenant has by its manner of use of the demised premises or method of operation therein, violated any such laws, ordinances, orders, rules, regulations or requirements with respect thereto. Tenant shall not do or permit any act or thing to be done in or to the demised premises which is contrary to law, or which will invalidate or be in conflict with public liability, fire or other policies of insurance at any time carried by or for the benefit of

20045650v1-999990.0010003

Owner. Tenant shall pay all costs, expenses, fines, penalties or damages, which may be imposed upon Owner by reason of Tenant's failure to comply with the provisions of this article. If the fire insurance rate shall, at the beginning of the lease or at any time thereafter, be higher than it otherwise would be, then Tenant shall reimburse Owner, as additional rent hereunder, for that portion of all fire insurance premiums thereafter paid by Owner which shall have been charged because of such failure by Tenant, to comply with the terms of this article. In any action or proceeding wherein Owner and Tenant are parties, a schedule or "make-up" of rate for the building or demised premises issued by a body making fire insurance rates applicable to said premises shall be conclusive evidence of the facts therein stated and of the several items and charges in the fire insurance rate then applicable to said premises.

**Subordination:**   7. This lease is subject and subordinate to all ground or underlying leases and to all mortgages which may now or hereafter affect such leases or the real property of which demised premises are a part and to all renewals, modifications, consolidations, replacements and extensions of any such underlying leases and mortgages. This clause shall be self-operative and no further instrument of subordination shall be required by any ground or underlying lessor or by any mortgagee, affecting any lease or the real property of which the demised premises are a part. In confirmation of such subordination, Tenant shall from time to time execute promptly any certificate that Owner may request.

**Tenant's Liability Insurance Property Loss, Damage, Indemnity:**   8. Owner or its agents shall not be liable for any damage to property of Tenant or of others entrusted to employees of the building, nor for loss of or damage to any property of Tenant by theft or otherwise, nor for any injury or damage to persons or property resulting from any cause of whatsoever nature, unless caused by or due to the negligence of Owner, its agents, servants or employees. Owner or its agents will not be liable for any such damage caused by other tenants or persons in, upon or about said building or caused by operations in construction of any private, public or quasi public work. Tenant agrees, at Tenant's sole cost and expense, to maintain general public liability insurance in standard form in favor of Owner and Tenant against claims for bodily injury or death or property damage occurring in or upon the demised premises, effective from the date Tenant enters into possession and during the term of this lease. Such insurance shall be in an amount and with carriers acceptable to the Owner. Such policy or policies shall be delivered to the Owner. On Tenant's default in obtaining or delivering any such policy or policies or failure to pay the charges therefor, Owner may secure or pay the charges for any such policy or policies and charge the Tenant as additional rent therefor. Tenant shall indemnify and save harmless Owner against and from all liabilities, obligations, damages, penalties, claims, costs and expenses for which Owner shall not be reimbursed by insurance, including reasonable attorneys fees, paid, suffered or incurred as a result of any breach by Tenant, Tenant's agent, contractors, employees, invitees, or licensees, of any covenant on condition of this lease, or the carelessness, negligence or improper conduct of the Tenant, Tenant's agents, contractors, employees, invitees or licensees. Tenant's liability under this lease extends to the acts and omissions of any subtenant, and any agent, contractor, employee, invitee or licensee of any subtenant. In case any action or proceeding is brought against Owner by reason of any such claim, Tenant, upon written notice from Owner, will, at Tenant's expense, resist or defend such action or proceeding by counsel approved by Owner in writing, such approval not to be unreasonably withheld.

**Destruction, Fire, and Other Casualty:**   9. (a) If the demised premises or any part thereof shall be damaged by fire or other casualty, Tenant shall give immediate notice thereof to Owner and this lease shall continue in full force and effect except as hereinafter set forth. (b) If the demised premises are partially damaged or rendered partially untenable by fire or other casualty, the damages thereto shall be repaired by and at the expense of Owner and the rent and other items of additional rent, until such repair shall be substantially completed, shall be apportioned from the day following the casualty according to the part of the premises which is usable. (c) If the demised premises are totally damaged or rendered wholly untenable by fire or other casualty, then the rent and other items of additional rent as hereinafter expressly provided shall be proportionately paid up to the time of the casualty and thenceforth shall cease until the date when the premises shall have been repaired and restored by Owner (or sooner reoccupied in part by Tenant then rent shall be apportioned as provided in subsection (b) above), subject to Owner's right to elect not to restore the same as hereinafter provided. (d) If the demised premises are rendered wholly untenable (if whether or not the demised premises are damaged in whole or in part) if the building shall be so damaged that Owner shall decide to demolish it or to rebuild it, then, in any of such events, Owner may elect to terminate this lease by written notice to Tenant given within 90 days after such fire or casualty or 30 days after adjustment of the insurance claim for such fire or casualty, whichever is sooner, specifying a date for the expiration of the lease, which date shall not be more than 60 days after the giving of such notice, and upon the date specified in such notice the term of this lease shall expire as fully and completely as if such date were the date set forth above for the termination of this lease and Tenant shall forthwith quit, surrender and vacate the premises without prejudice however, to Owner's rights and remedies against Tenant under the lease provisions in effect prior to such termination, and any rent owing shall be paid up to such date and any payments of rent made by Tenant which were on account of any period subsequent to such date shall be returned to Tenant. Unless Owner shall serve a termination notice as provided for herein, Owner shall make the repairs and restorations under the conditions of (b) and (c) hereof, with all reasonable expedition subject to delays due to adjustment of insurance claims, labor troubles and causes beyond Owner's control. After any such

casualty, Tenant shall cooperate with Owner's restoration by removing from the premises as promptly as reasonably possible, all of Tenant's salvageable inventory and movable equipment, furniture, and other property. Tenant's liability for rent shall resume five (5) days after written notice from Owner that the premises are substantially ready for Tenant's occupancy. (e) Nothing contained herein above shall relieve Tenant from liability that may exist as a result of damage from fire or other casualty. Notwithstanding the foregoing, including Owner's obligation to restore under subparagraph (b) above, each party shall look first to any insurance in its favor before making any claim against the other party for recovery for loss or damage resulting from fire or other casualty, and to the extent that such insurance is in force and collectible and to the extent permitted by law, Owner and Tenant each hereby releases and waives all right of recovery with respect to subparagraphs (b), (d) and (e) above, against the other or any one claiming through or under each of them by way of subrogation or otherwise. The release and waiver herein referred to shall be deemed to include any loss or damage to the demised premises and/or to any personal property, equipment, trade fixtures, goods and merchandise located therein. The foregoing release and waiver shall be in force only if both releases' insurance policies contain a clause providing that such a release or waiver shall not invalidate the insurance. Tenant acknowledges that Owner will not carry insurance on Tenant's furniture and/or furnishings or any fixtures or equipment, improvements, or appurtenances removable by Tenant and agrees that Owner will not be obligated to repair any damage thereto or replace the same. (i) Tenant hereby waives the provisions of Section 227 of the Real Property Law and agrees that the provisions of this article shall govern and control in lieu thereof.

**Eminent Domain:**   10. If the whole or any part of the demised premises shall be acquired or condemned by Eminent Domain for any public or quasi public use or purpose, then and in that event, the term of this lease shall cease and terminate from the date of title vesting in such proceeding and Tenant shall have no claim for the value of any unexpired term of said lease. Tenant shall have the right to make an independent claim to the condemning authority for the value of Tenant's moving expenses and personal property, trade fixtures and equipment, provided Tenant is entitled pursuant to the terms of the lease to remove such property, trade fixtures and equipment at the end of the term and provided further such claim does not reduce Owner's award.

**Assignment, Mortgage, Etc:**   11. Tenant, for itself, its heirs, distributees, executors, administrators, legal representatives, successors and assigns expressly covenants that it shall not assign, mortgage or encumber this agreement, nor underlet, or suffer or permit the demised premises or any part thereof to be used by others, without the prior written consent of Owner in each instance. Transfer of the majority of the stock of a corporate tenant or the majority partnership interest of a partnership tenant shall be deemed an assignment. If this lease be assigned, or if the demised premises or any part thereof be underlet or occupied by anybody other than Tenant, Owner may, after default by Tenant, collect rent from the assignee, undertenant or occupant, and apply the net amount collected to the rent herein reserved, but no such assignment, underletting, occupancy or collection shall be deemed a waiver of the covenant, or the acceptance of the assignee, undertenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained. The consent by Owner to an assignment or underletting shall not in any wise be construed to relieve Tenant from obtaining the express consent in writing of Owner to any further assignment or underletting.

**Electric Current:**   12. Tenant covenants and agrees that at all times its use of electric current shall not exceed the capacity of existing feeders to the building or the risers or wiring installation and Tenant may not use any electrical equipment which, in Owner's opinion, reasonably exercised, will overload such installations or interfere with the use thereof by other tenants of the building. The change at any time of the character of electric service shall in no wise make Owner liable or responsible to Tenant, for any loss, damages or expenses which Tenant may sustain.

**Access to Premises:**   13. Owner or Owner's agents shall have the right (but shall not be obligated) to enter the demised premises in any emergency at any time, and, in other reasonable times, to examine the same and to make such repairs, replacements and improvements as Owner may deem necessary and reasonably desirable to any portion of the building in which Owner may elect to perform, in the premises, following Tenant's failure to make repairs or perform any work which Tenant is obligated to perform under this lease, or for the purpose of complying with laws, regulations and other directions of governmental authorities. Tenant shall permit Owner to erect, use and maintain and replace pipes and conduits in and through the demised premises and to erect new pipes and conduits therein, provided they are concealed within the walls, floors or ceiling, wherever practicable. Owner may, during the progress of any work in the demised premises, take all necessary materials and equipment into said premises without the same constituting an eviction nor shall the Tenant be entitled to any abatement of rent while such work is in progress nor to any damages by reason of loss or interruption of business or otherwise. Throughout the term hereof Owner shall have the right to enter the demised premises at reasonable hours for the purpose of showing the same to prospective purchasers or mortgagees of the building, and during the last six months of the term for the purpose of showing the same to prospective tenants and may, during said six months period, place upon the demised premises the usual notice "To Let" and "For Sale" which notice Tenant shall permit to remain thereon without molestation. If Tenant is not present to open and permit an entry into the demised premises, Owner or Owner's agents may enter the same whenever such entry may be necessary or permissible by master key or



forcibly and provided reasonable care is exercised to safeguard Tenant's property, such entry shall not render Owner or its agents liable therefor, nor in any event shall the obligations of Tenant hereunder be affected. If during the last month of term Tenant shall have removed all or substantially all of Tenant's property therefrom, Owner may immediately enter, alter, renovate or redecorate the demised premises without limitation or abatement of rent, or insuring liability to Tenant for any compensation and such act shall have no effect on this lease or Tenant's obligations hereunder. Owner shall have the right at any time, without the same constituting an eviction and without incurring liability to Tenant therefor to change the arrangement and/or location of public entrances, passageways, doors, doorways, corridors, elevators, stairs, toilets, or other public parts of the building and to change the name, number or designation by which the building may be known.

**Vault, Vault Space, Area:** 14. No vaults, vault space or area, whether or not enclosed or covered, not within the property line of the building is leased hereunder, anything contained in or indicated on any sketch, blue print or plan, or anything contained elsewhere in this lease to the contrary notwithstanding. Owner makes no representation as to the location of the property line of the building. All vaults and vault space and all such areas not within the property line of the building, which Tenant may be permitted to use and/or occupy, is to be used and/or occupied under a revocable license, and if any such license be revoked, or if the amount of such space or area be diminished or required by any federal, state or municipal authority or public utility, Owner shall not be subject to any liability nor shall Tenant be entitled to any compensation or diminution or abatement of rent, nor shall such revocation, diminution or requisition be deemed constructive or actual eviction. Any loss, fee or charge of municipal authorities for such vault or area shall be paid by Tenant.

**Occupancy:** 15. Tenant will not at any time use or occupy the demised premises in violation of Articles 2 or 37 hereof, or of the certificate of occupancy issued for the building of which the demised premises are a part. Tenant has inspected the premises and accepts them as is, subject to the riders annexed hereto with respect to Owner's work, if any, in any event, Owner makes no representation as to the condition of the premises and Tenant agrees to accept the same subject to violations whether or not of record.

**Bankruptcy:** 16. (a) Anything elsewhere in this lease to the contrary notwithstanding, this lease may be cancelled by Landlord by the sending of a written notice to Tenant within a reasonable time after the happening of any one or more of the following events: (1) the commencement of a case in bankruptcy or under the laws of any state naming Tenant as the debtor; or (2) the making by Tenant of an assignment or any other arrangement for the benefit of creditors under any state statute. Neither Tenant nor any person claiming through or under Tenant, or by reason of any statute or order of court, shall thereafter be entitled to possession of the premises demised but shall forthwith quit and surrender the premises. If this lease shall be assigned in accordance with its terms, the provisions of this Article 16 shall be applicable only to the party then owning Tenant's interest in this lease.

(b) It is stipulated and agreed that in the event of the termination of this lease pursuant to (a) hereof, Owner shall forthwith, notwithstanding any other provisions of this lease to the contrary, be entitled to recover from Tenant as and for liquidated damages an amount equal to the difference between the rent reserved hereunder for the unexpired portion of the term demised and the fair and reasonable rental value of the demised premises for the same period. In the computation of such damages the difference between any installment of rent becoming due hereunder after the date of termination and the fair and reasonable rental value of the demised premises for the period for which such installment was payable shall be discounted to the date of termination at the rate of four percent (4%) per annum. If such premises or any part thereof be re-let by the Owner for the unexpired term of said lease, or any part thereof, before presentation of proof of such liquidated damages to any court, commission or tribunal, the amount of rent reserved upon such re-letting shall be deemed to be the fair and reasonable rental value for the part or the whole of the premises so re-let during the term of the re-letting. Nothing herein contained shall limit or prejudice the right of the Owner to prove for and obtain as liquidated damages by reason of such termination, an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, such damages are to be proved, whether or not such amount be greater, equal to, or less than the amount of the difference referred to above.

**Default:** 17. (1) If Tenant defaults in fulfilling any of the covenants of this lease other than the covenants for the payment of rent or additional rent; or if the demised premises become vacant or deserted; or if any execution or attachment shall be issued against Tenant or any of Tenant's property whereupon the demised premises shall be taken or occupied by someone other than Tenant; or if this lease be rejected under Section 365 of Title II of the U.S. Code (Bankruptcy Code); or if Tenant shall fail to move into or take possession of the premises within thirty (30) days after the commencement of the term of this lease, of which fact Owner shall be the sole judge; then, in any one or more of such events, upon Owner serving a written fifteen (15) days notice upon Tenant specifying the nature of said default and upon the expiration of said fifteen (15) days, if Tenant shall have failed to comply with or remedy such default, or if the said default or omission complained of shall be of a nature that the same cannot be completely cured or remedied within said fifteen (15) day period, and if Tenant shall not have diligently commenced curing such default within such fifteen (15) day period, and shall not thereafter with reasonable diligence and in good faith proceed to remedy or cure such

default, then Owner may serve a written five (5) days notice of cancellation of this lease upon Tenant, and upon the expiration of said five (5) days, this lease and the term thereunder shall end and expire as fully and completely as if the expiration of such five (5) day period were the day herein definitely fixed for the end and expiration of this lease and the term thereof and Tenant shall then quit and surrender the demised premises to Owner but Tenant shall remain liable as hereinafter provided.

(2) If the notice provided for in (1) hereof shall have been given, and the term shall expire as aforesaid; or if Tenant shall make default in the payment of the rent reserved herein or any item of additional rent herein specified or any part of either or in making any other payment herein required; then and in any of said events Owner may without notice, re-enter the demised premises either by force or otherwise, and dispossess Tenant by summary proceedings or otherwise, and the legal representative of Tenant or other occupant of demised premises and remove their effects and hold the premises as if this lease had not been made, and Tenant hereby waives the service of notice of intention to re-enter or to institute legal proceedings to that end.

**Remedies of Owner and Waiver of Redemption:** 18. In case of any such default, re-entry, expiration and/or dispossess by summary proceedings or other suits, (a) the rent, and additional rent, shall become due thereupon and be paid up to the time of such re-entry, dispossess and/or expiration, (b) Owner may re-let the premises or any part or parts thereof, either in the name of Owner or otherwise, for a term or terms, which may at Owner's option be less than or exceed the period which would otherwise have constituted the balance of the term of this lease and may grant concessions or free rent or charge a higher rental than that in this lease, and/or (c) Tenant or the legal representatives of Tenant shall also pay Owner as liquidated damages for the failure of Tenant to observe and perform said Tenant's covenants herein contained, any deficiency between the rent hereby reserved and/or covenanted to be paid and the net amount, if any, of the rents collected on account of the subsequent lease or leases of the demised premises for each month of the period which would otherwise have constituted the balance of the term of this lease. The failure of Owner to re-let the premises or any part or parts thereof shall not release or affect Tenant's liability for damages. In computing such liquidated damages there shall be added to the said deficiency such expenses as Owner may incur in connection with re-letting, such as legal expenses, reasonable attorneys' fees, brokerage, advertising and for keeping the demised premises in good order or for preparing the same for re-letting. Any such liquidated damages shall be paid in monthly installments by Tenant on the rent day specified in this lease. Owner, in putting the demised premises in good order or preparing the same for re-rental may, at Owner's option, make such alterations, repairs, replacements, and/or decorations in the demised premises as Owner, in Owner's sole judgment, considers advisable and necessary for the purpose of re-letting the demised premises, and the making of such alterations, repairs, replacements, and/or decorations shall not operate or be construed to release Tenant from liability. Owner shall in no event be liable in any way whatsoever for failure to re-let the demised premises, or in the event that the demised premises are re-let, for failure to collect the rent thereof under such re-letting, and in no event shall Tenant be entitled to receive any excess, if any, of such net rent collected over the sums payable by Tenant to Owner hereunder. In the event of a breach or threatened breach by Tenant or any of the covenants or provisions hereof, Owner shall have the right of injunction and the right to invoke any remedy allowed at law or in equity as if re-entry, summary proceedings and other remedies were not herein provided for. Mention in this lease of any particular remedy, shall not preclude Owner from any other remedy, in law or in equity. Tenant hereby expressly waives any and all rights of redemption granted by or under any present or future laws.

**Fees and Expenses:** 19. If Tenant shall default in the observance or performance of any term or covenant on Tenant's part to be observed or performed under or by virtue of any of the terms or provisions in any article of this lease, after notice if required and upon expiration of any applicable grace period if any, (except in an emergency), then, unless otherwise provided elsewhere in this lease, Owner may immediately or at any time thereafter and without notice perform the obligation of Tenant thereunder, and if Owner, in connection therewith or in connection with any default by Tenant in the covenant to pay rent hereunder, makes any expenditures or incurs any obligations for the payment of money, including but not limited to reasonable attorney's fees, in instituting, prosecuting or defending any actions or proceeding and prevails in any such action or proceeding, such sums so paid or obligations incurred with interest and costs shall be deemed to be additional rent hereunder and shall be paid by Tenant to Owner within ten (10) days of rendition of any bill or statement to Tenant therefor, and if Tenant's lease term shall have expired at the time of making of such expenditures or incurring of such obligations, such sums shall be recoverable by Owner as damages.

**No Representations by Owner:** 20. Neither Owner nor Owner's agent have made any representations or promises with respect to the physical condition of the building, the land upon which it is erected or the leased premises, the rents, leases, expenses of operation, or any other matter or thing affecting or related to the premises except as herein expressly set forth and no rights, easements or licenses are acquired by Tenant by implication or otherwise except as expressly set forth in the provisions of this lease. Tenant has inspected the building and the demised premises and is thoroughly acquainted with their condition, and agrees to take the same "as is" and acknowledges that the taking of possession of the demised premises by Tenant shall be conclusive evidence that the said premises and the building of which the same form a part were in good and satisfactory condition at the time such possession was so taken, except as to latent defects. All understandings and agreements heretofore

made between the parties hereto are merged in this contract, which shall fully and completely expresses the agreement between Owner and Tenant and any executory agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of it in whole or in part, unless such executory agreement is in writing and signed by the party against whom enforcement of the change, modification, discharge, or abandonment is sought.

**End of Term:** 21. Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Owner the demised premises, broom clean, in good order and condition, ordinary wear excepted, and Tenant shall remove all its property. Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of this lease. If the last day of the term of this lease or any renewal thereof, falls on Sunday, this lease shall expire at noon on the preceding Saturday unless it be a legal holiday in which case it shall expire at noon on the preceding business day.

**Quiet Enjoyment:** 22. Owner covenants and agrees with Tenant that upon Tenant paying the rent and additional rent and observing and performing all the terms, covenants and conditions, on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the premises hereby demised, subject, nevertheless, to the terms and conditions of this lease including, but not limited to, Article 33 hereof and to the ground lease, underlying leases and mortgages hereinbefore mentioned.

**Failure to Give Possession:** 23. If Owner is unable to give possession of the demised premises on the date of the commencement of the term hereof, because of the holding-over or retention of possession of any tenant, undertenant or occupants, or if the premises are located in a building being constructed, because such building has not been sufficiently completed to make the premises ready for occupancy or because of the fact that a certificate of occupancy has not been procured or for any other reason, Owner shall not be subject to any liability for failure to give possession on said date and the validity of the lease shall not be impaired under such circumstances, nor shall the same be construed in any way to extend the term of this lease, but the rent payable hereunder shall be abated (provided Tenant is not responsible for the inability to obtain possession or complete construction) until after Owner shall have given Tenant written notice that the Owner is able to deliver possession in the condition required by this lease. If permission is given to Tenant to enter into the possession of the demised premises or to occupy premises other than the demised premises prior to the date specified as the commencement of the term of this lease, Tenant covenants and agrees that such possession and/or occupancy shall be deemed to be under all of the terms, covenants, conditions and provisions of this lease except the obligation to pay the fixed annual rent set forth in page one of this lease. The provisions of this article are intended to constitute "an express provision to the contrary" within the meaning of Section 223-a of the New York Real Property Law.

**No Waiver:** 24. The failure of Owner to seek redress for violation of, or to insist upon the strict performance of any covenant or condition of this lease or of any of the Rules or Regulations set forth or hereafter adopted by Owner, shall not prevent a subsequent act which would have originally constituted a violation from having all the force and effect of an original violation. The receipt by Owner of rent and/or additional rent with knowledge of the breach of any covenant of this lease shall not be deemed a waiver of such breach and no provision of this lease shall be deemed to have been waived by Owner unless such waiver be in writing signed by Owner. No payment by Tenant or receipt by Owner of a lesser amount than the monthly rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement of any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Owner may accept such check or payment without prejudice to Owner's right to recover the balance of such rent or pursue any other remedy in this lease provided. No act or thing done by Owner or Owner's agents during the term hereby demised shall be deemed an acceptance of a surrender of said premises and no agreement to accept such surrender shall be valid unless in writing signed by Owner. No employee of Owner or Owner's agent shall have any power to accept the keys of said premises prior to the termination of the lease and the delivery of keys to any such agent or employee shall not operate as a termination of the lease or a surrender of the premises.

**Waiver of Trial by Jury:** 25. It is mutually agreed by and between Owner and Tenant that the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other (except for personal injury or property damage) on any matters whatsoever arising out of or in any way connected with this lease, the relationship of Owner and Tenant, Tenant's use of or occupancy of said premises, and any emergency statutory or any other statutory remedy. It is further mutually agreed that in the event Owner commences any proceeding or action for possession including a summary proceeding for possession of the premises, Tenant will not interpose any counterclaim of whatever nature or description in any such proceeding, including a counterclaim under Article 4 except for statutory mandatory counterclaims.

**Inability to Perform:** 26. This lease and the obligation of Tenant to pay rent hereunder and perform all of the other covenants and agreements hereunder on part of Tenant to be performed shall in no wise be affected, impaired or excused because Owner is unable to fulfill any of its obligations under this lease or to supply or is delayed in supplying any service expressly or impliedly to be supplied or is unable to make, or is

delayed in making, any repair, additions, alterations or decorations or is unable to supply or is delayed in supplying any equipment, fixtures or other materials if Owner is prevented or delayed from so doing by reason of strike or labor troubles, government preemption or restrictions or by reason of any rule, order or regulation of any department or subdivision thereof of any government agency or by reason of the conditions of which have been or are affected, either directly or indirectly, by war or other emergency, or when, in the judgement of Owner, temporary interruption of such services is necessary by reason of accident, mechanical breakdown, or to make repairs, alterations or improvements.

**Bills and Notices:** 27. Except as otherwise in this lease provided, a bill, statement, notice or communication which Owner may desire or be required to give to Tenant, shall be deemed sufficiently given or rendered if, in writing, delivered to Tenant personally or sent by registered or certified mail addressed to Tenant at the building of which the demised premises form a part or at the last known residence address or business address of Tenant or left at any of the aforesaid premises addressed to Tenant and the time of the rendition of such bill or statement and of the giving of such notice, or communication shall be deemed to be the time when such same is delivered to Tenant, mailed, or left in the premises as herein provided. Any notice by Tenant to Owner must be served by registered or certified mail addressed to Owner at the address first hereinabove given or at such other address as Owner shall designate by written notice.

**Water Charges:** 28. If Tenant requires, uses or consumes water for any purpose Tenant shall pay Owner for the cost of the meter and the cost of the installation thereof and throughout the duration of Tenant's occupancy Tenant shall keep said meter and installation equipment in good working order and repair at Tenant's own cost and expense. Tenant agrees to pay for water consumed, as shown on said meter as and when bills are rendered. Tenant covenants and agrees to pay the sewer rent, charge or any other tax, rent, levy or charge which now or hereafter is assessed, imposed or a lien upon the demised premises or the realty of which they are part pursuant to law, order or regulation made or issued in connection with the use, consumption, maintenance or supply of water, water system or sewage or sewage connection or system. The bill rendered by Owner shall be payable by Tenant as additional rent. Independently of and in addition to any of the remedies reserved to Owner hereinabove or elsewhere in this lease. Owner may sue for and collect any monies to be paid by Tenant or paid by Owner for any of the reasons or purposes hereinabove set forth.

**Sprinklers:** 29. Anything elsewhere in this lease to the contrary notwithstanding, if the New York Board of Fire Underwriters or the Insurance Service Office of any bureau, department or official of the federal, state or city government requires or recommend the installation of a sprinkler system or that any changes, modifications, alterations, or additional sprinkler heads or other equipment be made or supplied in an existing sprinkler system by reason of Tenant's business, or the location of partitions, trade fixtures, or other contents of the demised premises, or for any other reason, or if any such sprinkler system installations, changes, modifications, alterations, additional sprinkler heads or other such equipment, become necessary to prevent the imposition of a penalty or charge against the full allowance for a sprinkler system in the fire insurance rate set by any said Exchange or by any fire insurance company, Tenant shall, at Tenant's expense, promptly make such sprinkler system installations, changes, modifications, alterations, and supply additional sprinkler heads or other equipment as required whether the work involved or shall be structural or non-structural in nature.

**Cleaning:** 30. Tenant shall, at Tenant's expense, keep the demised premises clean and in order, to the satisfaction of Owner, and Tenant shall, at Tenant's own expense, make all repairs and replacements to the sidewalks and curbs adjacent thereto, and keep said sidewalks and curbs free from snow, ice, dirt and rubbish. Tenant shall, at Tenant's own expense, independently contract for the removal of all rubbish and refuse. The removal of such refuse and rubbish by others shall be subject to such rules and regulations as, in the judgment of Owner, are necessary for the proper operation of the building.

**Security:** 31. Tenant has deposited with Owner the sum of $250,000 as security for the faithful performance and observance by Tenant of the terms, provisions and conditions of this lease; it is agreed that in the event Tenant defaults in respect of any of the terms, provisions and conditions of this lease, including, but not limited to, the payment of rent and additional rent, Owner may use, apply or retain the whole or any part of the security so deposited to the extent required for the payment of any rent and additional rent or any other sum as to which Tenant is in default or for any sum which Owner may expend or may be required to expend by reason of Tenant's default in respect of any of the terms, covenants and conditions of this lease, including but not limited to, any damages or deficiency in the re-letting of the premises, whether such damages or deficiency accrued before or after summary proceedings or other re-entry by Owner. In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this lease, the security shall be returned to Tenant after the date fixed as the end of the Lease and after delivery of entire possession of the demised premises to Owner. In the event of a sale of the land and building or leasing of the building, of which the demised premises form a part, Owner shall have the right to transfer the security to the vendee or lessee and Owner shall thereupon be released by Tenant from all liability for the return of such security, and Tenant agrees to look to the new Owner solely for the return of said security; and it is agreed that the provisions hereof shall apply to every transfer or assignment made of the security to a new Owner. Tenant further covenants that it will not assign or encumber or attempt to assign or encumber the monies deposited herein



as security and that neither Owner nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance.

**Captions:** 32. The Captions are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this lease nor the intent of any provision thereof.

**Definitions** 33. The term "Owner" as used in this lease means only the Owner, or the mortgagee in possession, for the time being of the land and building (or the Owner of a lease of the building or of the land and building) of which the demised premises form a part, so that in the event of any sale or sales of said land and building or of said lease, or in the event of a lease of said building, or of the land and building, the said Owner shall be and hereby is entirely freed and relieved of all covenant and obligations of Owner hereunder, and it shall be deemed and construed without further agreement between the parties or their successors in interest, or between the parties and the purchaser, at any such sale, or the said lessee of the building, or of the land and building, that the purchaser or the lessee of the building has assumed and agreed to carry out any and all covenants and obligations of Owner hereunder. The words "re-enter" and "re-entry" as used in this lease are not restricted to their technical legal meaning. The term "business days" as used in this lease shall exclude Saturdays, Sundays and all days designated as holidays by the applicable building service union employees service contract or by the applicable Operating Engineers contract with respect to HVAC service. Wherever it is expressly provided in this lease that consent shall not be unreasonably withheld, such consent shall not be unreasonably delayed.

**Adjacent Excavation-Shoring** 34. If an excavation shall be made upon land adjacent to the demised premises, or shall be authorized to be made, Tenant shall afford to the person causing or authorized to cause such excavation, license to enter upon the demised premises for the purpose of doing such work as said person shall deem necessary to preserve the wall or the building of which demised premises form a part from injury or damage and to support the same by proper foundations without any claim for damages or indemnity against Owner, or diminution or abatement of rent.

**Rules and Regulations:** 35. Tenant and Tenant's servants, employees, agents, visitors, and licensees shall observe faith- fully, and comply strictly with the Rules and Regulations and such other and further reasonable Rules and Regulations as Owner or Owner's agents may from time to time adopt. Notice of any additional rules or regulations shall be given in such manner as Owner may elect. In case Tenant disputes the reasonableness of any additional Rule or Regulation hereafter made or adopted by Owner or Owner's agents, the parties hereto agree to submit the question of the reasonableness of such Rule or Regulation for decision to the New York office of the American Arbitration Association, whose determination shall be final and conclusive upon the parties hereto. The right to dispute the reasonableness of any additional Rule or Regulation upon Tenant's part shall be deemed waived unless the same shall be asserted by service of a notice, in writing upon Owner within fifteen (15) days after the giving of notice thereof. Nothing in this lease contained shall be construed to impose upon Owner any duty or obligation to enforce the Rules and Regulations or terms, covenants or conditions in any other lease, as against any other tenant and Owner shall not be liable

to Tenant for violation of the same by any other tenant, its servants, employees, agents, visitors or licensees.

**Glass** 36. Owner shall replace, at the expense of Tenant, any and all plate- and other glass damaged or broken from any cause whatsoever in and about the demised premises. Owner may insure, and keep insured, at Tenant's expense, all plate and other glass in the demised premises for and in the name of Owner. Bills for the premiums therefor shall be rendered by Owner to Tenant at such times as Owner may elect, and shall be due from, and payable by, Tenant when rendered, and the amount thereof shall be deemed to be, and be paid as, additional rent.

**Pornographic Uses Prohibited** 37. Tenant agrees that the value of the demised premises and the reputation of the Owner will be seriously injured if the premises are used for any obscene or pornographic purposes or any sort of commercial sex establishment. Tenant agrees that Tenant will not bring or permit any obscene or pornographic material on the premises, and shall not permit or conduct any obscene, nude, or semi- nude live performances on the premises, nor permit use of the premises for nude modeling, rap sessions, or as a so called rubber goods shops, or as a sex club of any sort, or as a "massage parlor." Tenant agrees further that Tenant will not permit any of these uses by any sublessee or assignee of the premises. This Article shall directly bind any successors in interest to the Tenant. Tenant agrees that if at any time Tenant violates any of the provisions of this Article, such violation shall be deemed a breach of a substantial obligation of the terms of this lease and objectionable conduct. Pornographic material is defined for purposes of this Article as any written or pictorial matter with prurient appeal or any objects of instrument that are primarily concerned with lewd or prurient sexual activity. Obscene material is defined here as it is in Penal law §235.00.

**Estoppel Certificate** 38. Tenant, at any time, and from time to time, upon at least 10 days prior notice by Owner, shall execute, acknowledge and deliver to Owner, and/or to any other person, firm or corporation specified by Owner, a statement certifying that this lease is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications), seating the dates which the rent and additional rent have been paid, and stating whether or not there exists any defaults by Owner under this lease, and, if so, specifying each such default.

**Successors and Assigns:** 39. The covenants, conditions and agreements contained in this lease shall bind and inure to the benefit of Owner and Tenant and their respective heirs, distributees, executors, administrators, successors, and except as otherwise provided in this lease, their assigns. Tenant shall look only to Owner's estate and interest in the land and building for the satisfaction of Tenant's remedies for the collection of a judgment (or other judicial process) against Owner in the event of any default by Owner hereunder, and no other property or assets of such Owner (or any partner, member, officer or director thereof, disclosed or undisclosed), shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under or with respect to this lease, the relationship of Owner and Tenant hereunder, or Tenant's use and occupancy of the demised premises.

SEE RIDER ATTACHED HERETO AND MADE A PART HEREOF CONTAINING ARTICLES 40 THROUGH 67

In Witness Thereof, Owner and Tenant have respectively signed and sealed this lease as of the day and year first above written.

Witness for Owner:

OWNER:

LAWRENCE FRIEDLAND

ESTATE OF MELVIN FRIEDLAND

By: ERIC FRIEDLAND, EXECUTOR, ESTATE OF MELVIN FRIEDLAND

TENANT:

8 W 58 ST HOSPITALITY LLC

By:

Witness for Tenant:

# ACKNOWLEDGEMENTS

**CORPORATE OWNER**
STATE OF NEW YORK,        ss.:
County of

On this        day of        , 20   , before me personally came
to me known, who being by me duly sworn, did depose and say that he
resides in        that he is the        of        the corporation described
in and which executed the foregoing instrument, as OWNER; that he knows the
seal of said corporation; the seal affixed to said instrument is such corporate
seal, that it was so affixed by order of the Board of Directors of said
corporation, and that he signed his name thereto by like order.

**CORPORATE TENANT**
STATE OF NEW YORK,        ss.:
County of

On this        day of        , 20   , before me personally came
to me known, who being by me duly sworn, did depose and say that he
resides in        that he is the        of        the corporation described
in and which executed the foregoing instrument, as TENANT; that he knows
the seal of said corporation; the seal affixed to said instrument is such corporate
seal, that it was so affixed by order of the Board of Directors of said
corporation, and that he signed his name thereto by like order.

**INDIVIDUAL OWNER**
STATE OF NEW YORK,        ss.:
County of

On this        day of        , 20   , before me personally came
to be known and known to me to be the individual        described
in and who, as OWNER, executed the foregoing instrument and acknowledged
to me that        he executed the same.

**INDIVIDUAL TENANT**
STATE OF NEW YORK,        ss.:
County of

On this        day of        , 20   , before me personally came
to be known and known to me to be the individual        described
in and who, as TENANT, executed the foregoing instrument and acknowledged
to me that        he executed the same.

## IMPORTANT – PLEASE READ

### RULES AND REGULATIONS ATTACHED TO AND MADE A PART OF THIS LEASE IN ACCORDANCE WITH ARTICLE 35.

1. The sidewalks, entrances, driveways, passages, courts, elevators, vestibules, stairways, corridors or halls shall not be obstructed or encumbered by any Tenant or used for any purpose other than for ingress to and egress from the demised premises and for delivery of merchandise and equipment in a prompt and efficient manner using elevators and passageways designated for such delivery by Owner. There shall not be used in any space, either by any tenant or by jobbers, or others in the delivery or receipt of merchandise, any hand trucks except those equipped with rubber tires and safeguards.

2. If the premises are situated on the ground floor of the building, Tenant thereof shall further, at Tenant's expense, keep the sidewalks and curb in front of said premises clean and free from ice, snow, etc.

3. The water and wash closets and plumbing fixtures shall not be used for any purposes other than those for which they were designed or constructed.

4. Tenant shall not use, keep or permit to be used or kept any foul or noxious gas or substance in the demised premises, or permit or suffer the demised premises to be occupied or used in a manner offensive or objectionable to Owner or other occupants of the building by reason of noise; odors and/or vibrations or interfere in any way with other Tenants or those having business therein.

5. No sign, advertisement, notice or other lettering shall be exhibited, inscribed, painted or affixed by any Tenant on any part of the outside of the demised premises or the building or on the inside of the demised premises if the same is visible from the outside of the premises without the prior written consent of Owner, except that the name of Tenant may appear on the entrance door of the premises. In the event of the violation of the foregoing by any Tenant, Owner may remove same without any liability and may charge the expense incurred by such removal to Tenant or Tenants violating this rule. Signs on interior doors and directory tablet shall be inscribed, painted or affixed for each Tenant by Owner at the expense of such Tenant, and shall be of a size, color and style reasonably acceptable to Owner.

6. No Tenant shall mark, paint, drill into, or in any way deface any part of the demised premises or the building of which they form a part. No boring, cutting or stringing of wires shall be permitted, except with

the prior written consent of Owner, and as Owner may direct. No Tenant shall lay linoleum, or other similar floor covering, so that the same shall come in direct contact with the floor of the demised premises, and, if linoleum or other similar floor covering is desired to be used an interlining of builder's deadening felt shall be first affixed to the floor, by a paste or other material, soluble in water, the use of cement or other similar adhesive material being expressly prohibited.

7. INTENTIONALLY OMITTED.

8. INTENTIONALLY OMITTED

9. Owner shall have the right to prohibit any advertising by any Tenant which, in Owner's opinion, tends to impair the reputation of Owner or its desirability as a building for stores or offices, and upon written notice from Owner, Tenant shall refrain from or discontinue such advertising.

10. Tenant shall not bring or permit to be brought or kept in or on the demised premises, any inflammable, combustible, or explosive, or hazardous fluid, material, chemical or substance, or cause or permit any odors of cooking or other processes, or any unusual or other objectionable odors to permeate in or emanate from the demised premises.

11. Tenant shall not place a load on any floor of the demised premises exceeding the floor load per square foot area which it was designed to carry and which is allowed by law. Owner reserves the right to prescribe the weight and position of all safes, business machines and mechanical equipment. Such installations shall be placed and maintained by Tenant at Tenant's expense in setting sufficient in Owner's judgement to absorb and prevent vibration, noise and annoyance.

12. Refuse and Trash - Tenant covenants and agrees, at its sole cost and expense, to comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards regarding the collection, sorting, separation and recycling of waste products, garbage, refuse and trash. Tenant shall pay all costs, expenses, fines, penalties or damages that may be imposed on Owner or Tenant by reason of Tenant's failure to comply with the provisions of this Building Rule 12, and, at Tenant's sole cost and expense, shall indemnify, defend and hold Owner harmless (including reasonable legal fees and expenses) from and against any actions, claims and suits arising from such non-compliance, utilizing counsel reasonably satisfactory to Owner.




200$5650v1 999990.000000

Address

Premises _____

TO

**STANDARD FORM OF**

 **Store**
**Lease** 

The Real Estate Board of New York, Inc.
@ Copyright 1994, All rights Reserved.
Reproduction in whole or in part prohibited.

Dated        20

Rent Per Year

Rent Per month

Term
From
To

Drawn by        _____

Checked by      _____

Entered by      _____

Approved by     _____




American LegalNet, Inc.
www.forms.workflow.com

**RIDER ANNEXED TO AND MADE A PART OF LEASE DATED AS OF AUGUST __, 2012 BY AND BETWEEN LAWRENCE FREIDLAND AND ESTATE OF MELVIN FRIEDLAND, AS OWNER OR LANDLORD, AND 8 W 58 ST HOSPITALITY LLC, AS TENANT, COVERING PREMISES 14 EAST 58TH STREET NEW, YORK, NEW YORK**

40. <u>Definitions</u>. The following definitions shall have the meanings hereinafter set forth wherever used in this Lease or any Exhibits or Schedules annexed hereto (if any):

(a) "<u>Building</u>" shall mean the building known as 14 East 58th Street, New York, New York .

(b) "<u>Commencement Date</u>" shall mean the date on which Landlord delivers to Tenant vacant possession of the Demised Premises and an ACP-5 for the Demised Premises.

(c) "<u>Demised Premises</u>" shall mean the entire Building.

(d) "<u>Expiration Date</u>" shall mean the dated which fifteen years and ten (10) months after the last day of the month in which the Commencement Date occurs.

(e) "<u>Land</u>" shall mean the land on which the Building is located.

(f) "<u>Lease Year</u>" shall mean each twelve (12) month period commencing each anniversary of the first day of the month immediately following the month in which the Commencement Date occurs during the term of the Lease, except that the first Lease Year shall be the period commencing on the Commencement Date and ending on the first anniversary of the last day of the month in which the Commencement Date occurs.

(g) "<u>Legal Requirements</u>" shall mean laws, statutes and ordinances (including building codes and zoning regulations and ordinances) and the orders, rules, regulations, directives and requirements of all federal, state, county, city and borough departments, bureaus, boards, agencies, offices, commissions and other subdivisions thereof, or of any official thereof, or of any other governmental public or quasi-public authority, whether now or hereafter in force, which may be applicable to the land or Building or the Demised Premises or any part thereof, or the sidewalks, curbs or areas adjacent thereto and all requirements, obligations and conditions of all instruments of record on the date of this Lease.

41. <u>Term</u>. The term of this Lease shall commence on the Commencement Date and shall end on the Expiration Date. Notwithstanding anything in this Lease to the contrary, if Tenant does not receive approval for a liquor license from the applicable community board within 90 days after the date hereof, Tenant may within 5 days after the expiration of such 90 day period, give a notice to Landlord terminating this Lease, in which event this Lease will terminate.

42. **Annual Fixed Rent.**

    (a)    The annual fixed rent payable by Tenant hereunder shall be as follows:

        (i)    during the first (1st) Lease Year, at the rate of $600,000.00 per annum ($50,000.00 per month);

        (ii)    during the second (2nd) Lease Year, at the rate of $650,000.00 per annum ($54,166.67 per month);

        (iii)    during each of the third (3rd) through the fifth (5th) Lease Years, at the rate of $700,000.00 per annum ($58,333.33 per month);

        (iv)    during each of the sixth (6th) through eighth (8th) Lease Years, at the rate of $770,000.00 per annum ($64,166.67 per month);

        (v)    during each of the ninth (9th) through eleventh (11th) Lease Years, at the rate of $847,000.00 per annum ($70,583.33 per month);

        (vi)    during each of the twelfth (12th) through fourteenth (14th) Lease Years, at the rate of $931,700.00 per annum ($77,641.67 per month); and

        (vii)    during each of the fifteenth (15th) Lease Year and the portion of the sixteenth (16th) Lease Year occurring during the term of this Lease, at the rate of $1,024,870.00 per annum ($85,405.83 per month).

    (b)    Provided that Tenant is not in default under this Lease, beyond any applicable grace period, annual fixed rent shall be abated during the period commencing on the Commencement Date and ending on the date (the "Rent Commencement Date") which is the ten (10) month anniversary of the Commencement Date. Notwithstanding the foregoing, if at any time Tenant shall be in default under this Lease and such default shall remain uncured beyond the expiration of the applicable grace period, then the aggregate amount of annual fixed rent so abated shall become immediately due and payable.

    (c)    Annual fixed rent will be payable in monthly installments in advance on the first day of each month without any set off or deduction whatsoever.

    (d)    It is understood and agreed that Tenant is liable for filing any and all applicable reports or returns and for payment of any and all taxes, fees or charges imposed by any governmental body, department, division, authority or agency having jurisdiction thereof, in connection with Tenant's use and/or occupancy of the Demised Premises including, without limitation, New York City "rent tax", if required.

    (e)    Notwithstanding anything in this Lease to the contrary, concurrently with the execution of this Lease, Tenant will pay to Landlord $100,000, which will be applied to annual fixed rent payable during the two (2) month period commencing on the Rent Commencement Date.

43. **Adjustments of Rent.**

    (a)    For the purposes of this Article 43, the following definitions shall apply:

        (i)    "Tax Statement" shall mean a statement issued by Landlord to Tenant setting forth the amount payable by Tenant for a specified Tax Year with respect to Taxes pursuant to Section 43(h) hereof.

        (ii)    "Tax Year" shall mean each period of twelve months, commencing on the first day of July of each such period, in which occurs any part of the term of this Lease or such other period of twelve months occurring during the term of this Lease as hereafter may be duly adopted as the fiscal year for real estate tax purposes of the City of New York.

        (iii)    "Taxes" shall mean all real estate taxes, assessments, vault taxes, governmental levies, municipal taxes, county taxes or any other governmental charge, general or special, ordinary or extraordinary, unforeseen as well as foreseen, of any kind or nature whatsoever, which are or may be assessed, levied or imposed upon all or any part of the Land and/or the Building including any tax, excise or fee measured by or payable with respect to any rent, and levied against Landlord and/or the Land and/or the Building, under the laws of the United States, the State of New York, the City of New York or any political subdivision thereof, as finally determined by the applicable taxing authorities but excluding Landlord's income taxes. If, due to a future change in the method of taxation or in the taxing authority, a new or additional real estate tax, or a franchise, income, transit, profit or other tax or governmental imposition, however designated, shall be levied against Landlord, and/or the Land and/or the Building, in addition to, or in substitution in whole or in part for any tax which would constitute "Taxes", or in lieu of additional Taxes, such tax or imposition shall be deemed for the purposes hereof to be included within the term "Taxes".

    (b)    (i)    Tenant shall pay as additional rent for each Tax Year occurring in whole or in part during the term of this Lease, an amount ("Tenant's Tax Payment") equal to all of the Taxes for such Tax Year. Tenant's Tax Payment shall be payable within 10 days after written demand from Landlord and shall be payable in the same number of installments that Landlord is required to make payments of Taxes to the appropriate taxing authority.

        (ii)    If the real estate tax fiscal year of The City of New York shall be changed during the term of this Lease, any Taxes for such fiscal year, a part of which is included within a particular Tax Year and a part of which is not so included, shall be apportioned on the basis of the number of days in such fiscal year included in the particular Tax Year for the purpose of making the computations under this Section 43(b).

(iii)   Tenant shall, throughout the term of this Lease, pay to Landlord as additional rent, any expenses reasonably incurred by Landlord in contesting Taxes or the assessed valuation of all or any part of the Land and Building, etc. or collecting any refund.

(iv)    If Landlord shall receive a refund of Taxes for any Tax Year occurring during the Term, Landlord shall (after deduction of any costs of obtaining the same for which Tenant and other tenants has not theretofore been charged) permit Tenant to credit against subsequent payments under this Section 43(a) the refund but not to exceed Tenant's Tax Payment paid for such Tax Year.

(v)     In the event that the commencement date of the term of this Lease shall be other than the first day of a Tax Year or the date of the expiration or other termination of this Lease shall be a day other than the last day of a Tax Year, then, in such event, in applying the provisions of this Article 43 with respect to any Tax Year in which such event shall have occurred, appropriate pro rata adjustments shall be made to reflect the occurrence of such event.

(c)     Payments shall be made pursuant to this Article 43 notwithstanding the fact that a Tax Statement is furnished to Tenant after the expiration of the term of this Lease.

(d)     In no event shall the annual fixed rent ever be reduced by operation of this Article 43 and the rights and obligations of Landlord and Tenant under the provisions of this Article 43 with respect to any additional rent shall survive the termination or expiration of this Lease.

(e)     Landlord's failure to render a Tax Statement with respect to any Tax Year shall not prejudice Landlord's right to thereafter render a Tax Statement with respect thereto or with respect to any subsequent Tax Year. Tenant's obligation to pay Taxes for any Tax Year during the term of this Lease shall survive the expiration or earlier termination of this Lease for a period of two (2) years.

(f)     (i) Notwithstanding anything in this Article 43 to the contrary, Landlord shall have the right, at its option, during any calendar year during the term hereof, to furnish to Tenant a written statement setting forth Landlord's reasonable estimate of Tenant's Tax Payment for such calendar year, in which event Tenant shall pay to Landlord on the first day of each month during such calendar year an amount equal to one twelfth of Landlord's estimate for such calendar year for Tenant's Tax Payment. If, however, Landlord shall furnish any such statement for any calendar year subsequent to the commencement hereof, then (i) Tenant shall pay Landlord on the first day of the month following the month in which Landlord furnishes such statement, one twelfth of Landlord's estimate for such calendar year for Tenant's Tax Payment multiplied by the number of months elapsed for such calendar year including the month in which such first payment date occurs and (ii) Tenant shall pay one-twelfth of such estimate on the first day of each subsequent month through the end of such estimate on the first day of each subsequent month through the end of such calendar year.

Active 20030223v3

(ii)  Landlord shall have the right from time to time during any calendar year, to furnish to Tenant a revised statement of Landlord's reasonable estimate of Tenant's Tax Payment for such calendar year in which event within fifteen (15) days thereafter any underpayment by Tenant for the prior months of such calendar year shall be paid by Tenant to Landlord and any overpayment by Tenant for the prior months of such calendar year shall be paid by Landlord to Tenant and thereafter each monthly payment shall be based on the revised statement.

(iii)  At the end of each calendar year, Landlord shall furnish to Tenant a statement (each an "Annual Statement") setting forth the actual Taxes for such calendar year. If the annual statement shall show that Tenant's payments made pursuant to this clause (f) exceeded the actual amounts required to be paid by Tenant under Section 43(b) for such calendar year, the Landlord shall refund to Tenant the amount of such excess within twenty (20) days after delivery of the Landlord's statement to Tenant. If the annual statement shall show that the payments made by Tenant under this clause (f) were less than the actual amounts required to be paid by Tenant under Section 43(b) for such calendar year, then Tenant shall pay the amount of such deficiency to Landlord within twenty (20) days after delivery of Landlord's statement to Tenant. Landlord's failure to render an Annual Statement with respect to any calendar year, shall not prejudice Landlord's right to thereafter render an Annual Statement with respect thereto or with respect to any subsequent calendar year.

(g)  Tenant shall not have any right to contest the amount or validity of any Taxes, and Landlord shall have the sole and exclusive right in its sole discretion to contest Taxes. Nothing contained herein shall obligate Landlord to contest Taxes.

(h)  All sums of money required to be paid under this Lease, including the items described in Article 42, the items described in this Article 43 and all other monies otherwise required to be paid by Tenant to Landlord hereunder shall be considered rent whether or not specifically designated as such.

44.  Electricity, Gas, Water, Utilities and Other Services.

(a)  Tenant shall, at Tenant's sole cost and expense, (i) install all meters and other equipment and perform all work (subject to the terms and provisions of Article 3 and the other provisions of this Lease) necessary for the Demised Premises to obtain electric service, gas service and water service and be separately billed therefor; (ii) maintain and keep in good working order and repair all such equipment installed by Tenant, (iii) arrange to obtain electricity, water and gas services from the companies furnishing same to the Building; and (iv) pay and be responsible for all charges for electric, water and gas services directly to said companies as and when billed.

(b)  Landlord shall have no obligation to provide or furnish any heat or air conditioning or any heat or air conditioning equipment to the Demised Premises. Tenant shall have the obligation, at Tenant's sole cost and expense, to obtain and pay for heat and air conditioning at the Demised Premises and install all equipment and perform all work (subject to the terms and provisions of Article 3 and the other articles of this Lease) and obtain all permits or licenses, if any, necessary for the Demised Premises to receive air conditioning and heating.

5

(c)     Landlord shall have no responsibility for the rendition of any services or utilities to Tenant or the Demised Premises including, without limitation, air conditioning, heating, cleaning, elevator, gas, electricity or water.

(d)     Landlord reserves the right, without liability to Tenant and without constituting any claim of constructive eviction, to stop or interrupt any heating, electricity, air conditioning, gas, water, or other service and to stop or interrupt any permitted use of any facilities at such times as may be necessary and for as long as may reasonably be required by reason of accidents, strikes, or the making of repairs, alterations or improvements, or inability to secure a proper supply of fuel, steam, water, electricity, labor or supplies, or by reason of any other similar or dissimilar cause beyond the reasonable control of Landlord. No such stoppage or interruption shall entitle Tenant to any diminution or abatement of rent or other compensation nor shall this Lease or any of the obligations of Tenant be affected or reduced by reason of any such stoppage or interruption unless such stoppage or interruption was caused by the gross negligence or willful misconduct of Landlord.

(e)     Tenant shall throughout the term of this Lease obtain and maintain, at Tenant's cost and expense, a contract for the maintenance, repair and replacement of the heating and air conditioning systems for the Building with a contractor approved by Landlord, such approval not to be unreasonably withheld.

45.     Subordination.

(a)     In the event of any act or omission of Landlord that would give Tenant the right, immediately or after lapse of a period of time, to cancel or terminate this Lease, or to claim a partial or total eviction, Tenant shall not exercise such right (i) until it has given written notice of such act or omission to the holder of each superior mortgage and the lessor of each superior Lease whose name and address shall previously have been furnished to Tenant in writing and (ii) unless such act or omission shall be one that is not capable of being remedied by Landlord or such holder or lessor within a reasonable period of time, until a reasonable period for remedying such act or omission shall have elapsed following the giving of such notice and following the time when such holder or lessor shall have become entitled under such superior mortgage or superior Lease, as the case may be, to remedy the same (which reasonable period shall in no event be less than the period to which Landlord would be entitled under this Lease or otherwise, after similar notice, to effect such remedy), provided that such holder or lessor shall give Tenant written notice of its intention to remedy such act or omission and shall, with due diligence, commence and continue to do so, until 30 days have elapsed after each such holder has received such notice without the condition in question being remedied.

(b)     If any mortgagee or any ground lessor or any other person claiming by or through any such mortgagee or ground lessor, or by or through any foreclosure proceeding, sale in lieu of foreclosure, summary proceeding or otherwise, shall succeed to the rights of Landlord under this Lease, Tenant shall, at Landlord's request, attorn to and recognize such successor as the Landlord of Tenant under this Lease, and Tenant shall promptly execute, acknowledge and deliver at any time any instruments requested by such person or persons to evidence such attornment. Upon such attornment, this Lease shall continue as a direct Lease from such successor Landlord to Tenant, upon and subject to all of the provisions of this Lease for the

remainder of the term hereunder except that the successor landlord shall not be responsible or liable for any breach, default, act or omission of Landlord. The attornment provisions of this Article shall be self-operative, and no further instrument of attornment shall be required or needed therefor. In confirmation of any such agreement to attorn on the part of Tenant, Tenant shall, at the request of Landlord or any mortgagee or ground lessor, promptly execute, acknowledge and deliver such further instruments as shall be requested by any mortgagee or ground lessor, and if Tenant shall fail to execute and deliver any such further instruments within seven days after any request therefor, Landlord shall have (in addition to any other rights or remedies) the right to execute, acknowledge and deliver any such further instruments for an on behalf of Tenant, and Tenant hereby irrevocably constitutes and appoints Landlord as the attorney-in-fact of Tenant for such purposes.

46.  Assignment and Subletting.

(a)  For purposes of Article 11, the assignment, transfer, pledge, mortgage, hypothecation or other disposition, whether voluntarily or involuntarily or by operation of law or otherwise and whether in a single transaction or in a series of related or unrelated transactions, of more than 49% of the direct or indirect ownership interests in Tenant, however accomplished, shall be deemed an assignment of this Lease requiring the consent of Landlord.

(b)  Provided Tenant is not in default under this Lease beyond the expiration of the applicable grace period, if any, hereunder as of the effective date of the assignment or sublease, Tenant shall have the right to assign this Lease or sublease the entire Demised Premises in connection with a bona fide sale of Tenant's business at the Demised Premises, but only with the prior written consent of Landlord, such consent not to be unreasonably withheld.

(c)  In the event Tenant shall desire to assign this Lease or sublet the Demised Premises, the following procedure shall apply:

(i)  Should Tenant desire permission to assign this Lease or sublet all of the Demised Premises, it must request the consent of Landlord in writing at least thirty (30) days prior to the date when the assignee or subtenant is to take possession;

(ii)  Notwithstanding Landlord's permission to assign or sublet the Demised Premises, Tenant shall remain responsible for all of the terms, covenants and conditions of this Lease in the event that the assignee or sublessee fails to perform;

(iii)  No sublease shall be made if such sublease shall result in an occupancy of more than one (1) tenant (including Tenant) in the Demised Premises;

(iv)  The consent by Landlord to any assignment or subletting or occupancy shall not in any way be construed to relieve Tenant from obtaining the express consent in writing of Landlord to any further assignment or subletting;

(v)  Tenant shall reimburse Landlord for all reasonable costs and expenses (including, without limitation, reasonable attorney's fees) incurred by Landlord in connection with any proposed assignment or subletting; and

(vi)     Every sublease of the Demised Premises shall contain the following provision:

"In the event of a default under any underlying Lease of all or any portion of the premises demised hereby which results in the termination of such Lease, the subtenant hereunder shall, at the option of the lessor under any such Lease attorn to and recognize such lessor as Landlord hereunder and shall, promptly upon such lessor's request, execute and deliver all instruments necessary or appropriate to confirm such attornment and recognition. The subtenant hereunder hereby waives all rights under present or future law to elect, by reason of the termination of such underlying Lease, to terminate this sublease or surrender possession of the premises demised hereby."

(d)     Regardless of Landlord's consent, no subletting or assignment shall release Tenant's obligation or alter the primary liability of Tenant to pay annual fixed rent and additional rent and to perform all other obligations to be performed by Tenant hereunder. The acceptance of rent by Landlord from any other person shall not be deemed to be a waiver of its right to consent, and consent to any assignment or subletting shall not be deemed consent to any subsequent assignment or subletting. If any assignee of Tenant or any successor of Tenant defaults in the performance of any of the terms hereof, Landlord may proceed directly against Tenant or any guarantor without the necessity of exhausting remedies against such assignee or successor and Tenant named herein and any assignee of such Tenant who assumes the obligations of the named Tenant under this Lease shall be jointly and severally liable for performance of all obligations of Tenant under this Lease.

(e)     Notwithstanding the foregoing, Tenant may without the prior written consent of Landlord, but subject to the other terms and provisions of this Article 46, assign this Lease to an entity that is 100% owned and controlled by Tenant.

47.     Preparation of Premises.

(a)     Tenant has examined the Demised Premises and agrees to accept the same in their condition and state of repair existing as of the Commencement Date and understands and agrees that Landlord shall not be required to perform any work, supply any materials or incur any expense or obtain any governmental permit, approval, license or certificate to prepare the Demised Premises for Tenant's occupancy.

(b)     Landlord does not warrant that any license or other governmental certificate or permit which may be required for Tenant's business to be carried on in the Demised Premises will be granted, or if granted will be continued in effect or renewed. If any license or other governmental certificate or permit shall be required for the lawful conduct of Tenant's business, Tenant shall duly procure and thereafter maintain such license, certificate or permit and submit the same to inspection by Landlord, it being understood and agreed that Tenant's obligations under this Lease shall in no wise be affected or impaired by reason of Tenant's inability to secure and/or maintain the same. Tenant shall at all times comply with the terms and conditions of each license or permit affecting the premises. Landlord agrees to cooperate with Tenant, at no cost, expense or liability to Landlord, in connection with Tenanting obtaining a liquor license or any other governmental license, certificate or permit.

8

(c)    Tenant hereby covenants and agrees that Tenant will, at Tenant's own cost and expense, and in a good and workmanlike manner, make and complete the work and installations in and to the Demised Premises necessary for Tenant to conduct its business in the Demised Premises in accordance with the terms and provisions of this Lease.

48.    Limitation on Landlord's Liability.

(a)    Tenant shall look only to Landlord's estate and interest in the Building for the satisfaction of Tenant's remedies for the collection of a judgment (or other judicial process) requiring the payment of money by Landlord in the event of any default or liability by Landlord hereunder, and no other property or assets of Landlord and no property of Landlord (other than the Building) or of any of officer, employee, director, shareholder, partner or principal of Landlord shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under or with respect to this Lease, the relationship of Landlord and Tenant hereunder or Tenant's use or occupancy of the Demised Premises.

49.    Insurance.

(a)    Tenant shall obtain and keep in full force and effect during the term of this Lease, at Tenant's own cost and expense, to protect Landlord, Landlord's agents, contractors, employees, mortgagees and ground lessors, and Tenant as insureds (i) comprehensive public liability insurance to afford protection against any and all claims for personal injury, death or property damage occurring in the Demised Premises in an amount of not less than $1,000,000 for injury, death or damage arising out of any one occurrence, and $1,000,000 for injury, death or damage in the aggregate for any policy year, with no deductible or self-insured retention together with at least $5,000,000 excess or umbrella liability insurance or in any increased amount reasonably required by Landlord, from time to time, during the term hereof, if any; (ii) insurance against loss or damage by fire (and such other risks and hazards as are insurable under then available standard forms of fire insurance policies with extended coverage) to Tenant's property (including without limitation, Tenant's improvements and betterment, personal property and business equipment) in or about the Demised Premises for the full insurable value thereof; and (iii) such other insurance as Landlord may reasonably require. Tenant shall carry builder's risk insurance, completed value form, covering all physical loss, in an amount reasonable satisfactory to, and to protect the Landlord and such others as Landlord shall reasonably designate, at all times when Tenant is constructing any improvements, alterations, additions or other installations in or about the Demised Premises.

(b)    All such insurance required to be obtained by Tenant shall be written in form and substance reasonably satisfactory to Landlord by an insurance company reasonably satisfactory to Landlord with an A-IX or better rating in Bests' authorized to do business in New York State. Upon failure of Tenant to procure, maintain and pay all premiums therefor, Landlord may, at its option after five days notice to Tenant, do so, and Tenant agrees to pay the cost thereof to Landlord as additional rent under this Lease. Tenant shall cause to be included in all such insurance policies a provision to the effect that the same will be non-cancelable and not permitted to lapse except upon thirty (30) days' prior notice to Landlord. On the date hereof the original insurance policies or appropriate certificates shall be deposited with Landlord. Any renewals, replacements or endorsements thereto shall also be so deposited.

9

(c)      Except to the extent expressly provided in Article 9 and paragraph (d) hereof, nothing contained in this Lease shall relieve either Landlord or Tenant of any liability to the other, or to the insurance carrier of the other, which the other may have under law or the provisions of this Lease, by reason of any damage to the Demised Premises or the Building, as the case may be, by fire or other casualty.

(d)     (i)    Tenant agrees to include, if obtainable at no additional cost or expense, in its fire insurance policy or policies on its furniture, furnishings, fixtures and other property removable by Tenant under the provisions of this Lease appropriate clauses pursuant to which the insurance company or companies (y) waive the right of subrogation against Landlord and/or any tenant of space in the Building with respect to losses payable under such policy or policies and/or (z) agree that such policy or policies shall not be invalidated should the insured waive in writing prior to a loss any or all right of recovery against any party for losses covered by such policy or policies. But should any additional premium be exacted for any such clause or clauses, Tenant shall be released from the obligation hereby imposed unless Landlord or the other tenants pays such additional premium.

(ii)    Provided that Landlord's right of full recovery under its policy or policies aforesaid is not adversely affected or prejudiced thereby, Landlord hereby waives any and all right of recovery which it might otherwise have against Tenant, its servants, agents and employees, for loss or damage occurring to the Building and the fixtures, appurtenances and equipment therein, to the extent the same is covered by Landlord's insurance, notwithstanding that such loss or damage may result from the negligence or fault of Tenant, its servants, agents or employees. Provided that Tenant's right of full recovery under its aforesaid policy or policies is not adversely affected or prejudiced thereby, Tenant hereby waives any and all right of recovery which it might otherwise have against Landlord, its servants, and employees, and against every other tenant in the Building who shall have executed a similar waiver as set forth in this Section 49(d)(ii) for loss or damage to, Tenant's furniture, furnishings, fixtures and other property removable by Tenant under the provisions hereof to the extent that same is covered by Tenant's insurance, notwithstanding that such loss or damage may result from the negligence or fault of Landlord, its servants, agents or employees, or such other tenant and the servants, agents or employees thereof.

(iii)    Landlord and Tenant hereby agree to advise the other promptly if the clauses to be included in their respective insurance policies pursuant to subdivisions (i) and (ii) hereof cannot be obtained, Landlord and Tenant hereby also agree to notify the other promptly of any cancellation or change of the terms of any such policy which would affect such clauses.

(e)      If for any reason of the use to which the Demised Premises are put by Tenant (except the use permitted hereunder) or the character of or the manner in which the Tenant's business is carried on, the insurance rates for fire and casualty insurance for the Building shall be

increased above the rates that would be effective if the Demised Premises had been used for the retail sale of dry goods Tenant shall within 10 days after demand, pay to the Landlord as additional rent, the amount by which the premiums for such insurance are so increased. Such payment shall be paid with the next installment of fixed annual rent but in no case later than one month after such demand whichever occurs sooner.

50.  Sidewalks.

Notwithstanding anything in Articles 4 and 30 to the contrary, (a) Tenant shall, at Tenant's cost and expense, keep the sidewalks and curbs adjacent to the Demised Premises free from snow, ice, dirt and rubbish and make all necessary repairs or replacements thereto, and (b)Tenant shall keep the sidewalks and curbs adjacent to the Demised Premises constantly clean and sweep as necessary each day that the Demised Premises are open for business. Tenant may, at Tenant's sole cost and expense, install tables, chairs, planters, a sign containing only Tenant's name and related items on the sidewalk in front of the Demised Premises provided such installation and use complies with all Legal Requirements.

51.  Late Payment Charge.

If Tenant shall make any payment of annual fixed rent, additional rent or other charges more than five (5) days after the same is due and payable Tenant shall pay a late payment charge equal to five percent (5%) of the amount due; such amount shall be payable as additional rent hereunder, and shall be payable in addition to any interest payable on such late payment of fixed rent, additional rent or other charges.

52.  Use.

(a)  Tenant shall use and occupy the Demised Premises as a fully service restaurant and lounge and related and ancillary administrative offices and for no other purpose. Tenant may sell beer, wine and liquor at the Demised Premises for on premises consumption provided Tenant, at Tenant's sole cost and expense, obtains all required governmental certificates, licenses, approvals and permits with respect thereto.

(b)  Tenant covenants and agrees that it will:

(i)  at Tenant's expense, clean the interiors and exteriors of the windows and doors (including, in each case, the frames therefor) in the Demised Premises and in the perimeter walls thereof whenever in the reasonable judgment of Landlord necessary;

(ii)  at Tenant's expense, keep the Demised Premises and adjacent sidewalk clean, and in a neat, sanitary condition, keep all plumbing in the Demised Premises and sanitary systems and installations serving the Demised Premises in a good state of repair and operating condition to the points they connect with the main vertical risers and stacks of the Building, place all garbage in sealed waterproof containers at a location approved by Landlord and remove all garbage, rubbish and other debris from the Demised Premises daily between the hours of 7:00 P.M. and 8:30 A.M. through



areas designated by Landlord to the Building's designated disposal area under conditions approved by Landlord and keep such areas in a clean and sanitary condition. Notwithstanding anything in Article 30 to the contrary, Tenant shall at Tenant's sole cost and expense, arrange for the removal of Tenant's refuse, rubbish, garbage and other debris;

(iii)    at Tenant's expense, promptly replace any and all glass (including mirrors) in the Demised Premises and in the perimeter walls thereof, the frames for such glass, and any lettering and ornamentation on such glass, which may be broken or damaged, regardless of the cause of such damage even though the same may be occasioned by the negligence of Landlord, its servants or agents (unless the same was caused by the gross negligence of Landlord), it being the intent of this provision that Landlord be hereby indemnified to the full extent to which it would be were such glass, frames, lettering and ornamentation insured for the benefit of Landlord on the customary form of glass insurance carried by Landlord with respect to other premises in the Building;

(iv)    not install, place or permit (1) any awning or sign on the outside of the Demised Premises, (2) any sign inside the Demised Premises which is visible outside of the Demised Premises, (3) any advertising fixture in or outside of the Building or (4) any canopies, marquees, banners, flags or other projections of any kind on any part of the Demised Premises or over the sidewalk abutting same, unless in each instance consented to in advance in writing by Landlord. Each such awning or sign so consented to by Landlord shall, to the reasonable satisfaction of Landlord, be kept clean and in good order and state of repair and appearance by and at the expense of Tenant. Each sign and awning installed by Tenant must at all times comply with all Legal Requirements; and any consent to a sign by Landlord does not constitute Landlord's representation that it complies with Legal Requirements. In no event may Tenant install or place a neon or flashing signs in or about the Demised Premises.

(v)    if Tenant elects to use, play or operate or permit to be used, played or operated any music or any sound making or sound reproducing device in the Demised Premises, Tenant will use commercially reasonable efforts to ensure that no sound shall be heard outside of the Demised Premises and in all events comply with all Legal Requirements with respect thereto; and

(vi)    use commercially reasonable efforts to eliminate from the Demised Premises all obnoxious fumes, odors or gases

(c)    Tenant shall not suffer or permit the Demised Premises or any part thereof to be used in any manner, or anything to be done therein, or suffer or permit anything to be brought into or kept therein, which would in any way (i) violate any Legal Requirement (ii) violate the certificate of occupancy for the Building, (iii) constitute a public or private nuisance, (iv) impair, in the reasonable opinion of Landlord, the appearance, character or reputation of the Building,

(v) interfere with or tend to impair or interfere with the use of any of the other areas of the Building by, or occasion discomfort, annoyance or inconvenience to, Landlord or any of the other tenants or occupants of the Building, any such impairment or interference to be in the reasonable judgment of Landlord.

(d)    Tenant shall (i) not advertise or conduct any auction, distress, fire or bankruptcy sale, or a real or fictitious going-out-of business sale, or suffer, permit or conduct the type of business commonly called a "cut price," "outlet," "discount," or "cut rate" dealer or store, flea market or temporary outlet for apparel or other goods; (ii) not permit the sale or display of any obscene, pornographic or "adult" materials or paraphernalia, including, without limitation, movies, videotapes, books, magazines or any related items, or make use of the same in any activities or advertising of Tenant or permit or conduct the operation of a "massage parlor" or any obscene, nude or semi-nude or semi-nude live performances at the Demised Premises; (iii) not permit the sale or display of any paraphernalia used in the preparation or consumption of controlled substances; and (iv) not use or permit the use of any portion of the Demised Premises for any unlawful, improper immoral or objectionable purposes.

(e)    Tenant shall give to Landlord a key to the Demised Premises.

(f)    Tenant covenants and agrees that Landlord shall have no responsibility or obligation with respect to the security of the Demised Premises and that Tenant shall do whatever is necessary to insure proper security in the Demised Premises given the permitted use for the Demised Premises.

(g)    Tenant covenants and agrees to:

(i)    keep and maintain the Demised Premises, adjacent sidewalks and Tenant's personal property and signs therein and the exterior and interior portions of all doors, in a neat, clean, sanitary and safe condition and to keep the Demised Premises free from rodents, pests and vermin; in connection therewith, Tenant shall cause the Demised Premises to be exterminated with such frequency and in such a manner as will, in Landlord's judgment, prevent the existence of vermin or other infestation;

(ii)    apply for, secure, maintain and comply with all licenses or permits which may be required for the conduct and occupancy by Tenant of its business and to pay, if, as and when due all license and permit fees and charges of a similar nature in connection therewith;

(iii)    clean the interior and the exterior of all exit doors in the Demised Premises at least monthly at Tenant's sole cost and expense;

(iv)    pay before delinquency any and all taxes, custom and import duties, assessments and public charges levied, assessed or imposed upon Tenant, Tenant's business, Tenant's real property or upon Tenant's personal property, wherever located; and

13

(v) furnish, install and maintain in the Demised Premises fire safety equipment as required by law, by the insurance company insuring the Building and by the New York Board of Fire Underwriters or similar body.

(vi) take all commercially reasonable measures necessary to prevent the transmission of heat and/or odors from the demised premises and to that end to install, maintain, repair and replace, as required, all at Tenant's sole cost and expense, adequate vents, exhaust and exhaust hoods, specifically, but without limitation, Tenant shall provide, install and obtain, at Tenant's sole cost and expense all required approvals for ventilation systems designed to adequately ventilate Tenant's kitchen space. The systems shall conform with all requirements of the New York City Building Code (the "Code"), including those pertaining to volume of air ventilated, and requirements of Reference Standard 13-3 of the Code. Tenant shall also provide, at Tenant's sole cost and expense, odor removal/absorption equipment in the kitchen ventilation system to minimize, to the extent commercially reasonable, the release of cooking odors from the kitchen into the outdoor air or the building. Tenant shall install and maintain in working order, at Tenant's sole cost and expense, ventilation and odor removal equipment. Tenant agrees to indemnify and hold harmless Landlord, its members, employees and agents, from any and all loss, damage, claims, liabilities, costs and expenses (including reasonable attorneys fees and courts costs) arising out of or in connection with, any odors emanating from the demised premises;

(vii) at Tenant's sole cost and expense, (A) install a grease trap in the demised premises at a location reasonably satisfactory to Owner and (B) clean same weekly. Tenant covenants at all times during the term to keep the drain, waste and sewer pipes and connections in the demised premises, leading from the demised premises, or leading to the demised premises, free from obstruction and in compliance with the Administrative Code of the City of New York and all other applicable laws, codes, ordinances and regulations.

(viii) not dispose of garbage, refuse, cooking oils or fats in the sanitary sewer system, but shall dispose of all garbage, refuse, cooking oils and fats in accordance with the provisions of this Article; and

(ix) not place any garbage on the sidewalk prior to 7:00 p.m. and then only for next morning pickup

(h) Tenant shall, at its own cost and expense, (i) install, utilize and maintain in good working order and condition in the Demised Premises a ventilation and exhaust air filtration system satisfactory to Landlord to collect all smoke, fumes, grease and odors emanating from the Demised Premises, (ii) install dry chemical extinguishing devices approved by the local fire insurance rating organization and Landlord's insurance carrier and keep such devices in good working order and repair and regularly serviced under a maintenance agreement as may be required by Landlord or by such rating organization or insurance carrier, (iii) keep and maintain

all exhaust ducts and filters in a clean condition, (iv) install a proper gas cut-off valve in connection with all equipment using gas, (v) keep the drain, waste and sewer pipes and connections with mains free from obstruction to the reasonable satisfaction of Landlord, its agents and all authorities having jurisdiction, (vi) furnish and install, as part of Tenant's kitchen exhaust system, an Ansul R-101 Fire Protection System approved by the Board of Fire Underwriters and municipal and other governmental authorities having jurisdiction thereover, and thereafter maintain, repair, and whenever necessary, replace the same, and (vi) install and maintain any fire safety devices required by law or generally required by insurance companies insuring persons, firms or corporations who are engaged in the same or a similar business as Tenant in the City of New York.

(i)     If the fire and casualty insurance for the Building is increased because all or part of the Demised Premises is used as a restaurant or for the preparation of food Tenant will be responsible to pay for such increased cost.

(j)     Landlord and Tenant mutually acknowledge that irreparable injury will result to Landlord in the event of a breach of the provisions of <u>Article 2</u> of this Lease or this <u>Article 52,</u> and in the event of any such breach by Tenant, Landlord shall be entitled, in addition to any other remedies available to it, to an injunction to restrain the breach of any of said provisions.

(k)     Tenant may use the existing vent shaft and exhaust unit, provided that Tenant shall be responsible for maintaining, repairing and replacing said equipment in good order and condition and in accordance with all applicable Legal Requirements.

53.     <u>Additional Event of Default.</u>

The commencement of any action or proceeding by any governmental authority alleging that the Demised Premises is being used for an illegal or pornographic use which is not dismissed within 30 days after the filing thereof shall constitute an event of default hereunder entitling Landlord to terminate this Lease.

54.     <u>Brokerage.</u>

Tenant covenants, represents and warrants to Landlord that it has had no dealings or communications with any broker or agent in connection with the consummation of this Lease other than Newmark Knight Frank (the "Broker") and Tenant covenants and agrees to pay, hold harmless and indemnify Landlord from and against any and all cost, expense (including, without limitation, reasonable attorneys' fees) or liability incurred by Landlord resulting from a breach of such covenant, representation and warranty by Tenant. Landlord agrees to pay a commission to the Broker pursuant to a separate agreement. The provision of this <u>Article 54</u> will survive termination of this Lease.

55.     <u>Hazardous Materials.</u>

(a)     Tenant and the Demised Premises will remain in compliance with all applicable  laws, ordinances, and regulations (including consent decrees and administrative orders) relating to public health and safety and protection of the environment, including those statutes, laws, regulations, and ordinances identified in <u>Section 55(g),</u> all as amended and modified from time to

Active 20030223v3

time (collectively, "environmental laws"). All governmental permits relating to the use or operation of the Demised Premises required by applicable environmental laws are and will remain in effect, and Tenant will comply with them.

(b)     Tenant will not permit to occur (i) any release, generation, manufacture, treatment, or disposal of any hazardous material, as that term is defined in Section 55(g), on, in, under, or from the Demised Premises or (ii) any storage or transportation of any hazardous material in or to or from the Demised Premises in violation of any environmental laws unless caused by Landlord except for hazardous materials located in the Demised Premises on the date hereof. Tenant will promptly notify Landlord, in writing, if Tenant has or acquires notice or knowledge that any hazardous material has been or is threatened to be released, generated, manufactured, treated, or disposed of, on, in, under, or from the Demised Premises; and if any hazardous material is released or disposed of on the Demised Premises or is otherwise found in the Demised Premises in violation of environmental laws, Tenant, at its own cost and expense, will immediately take such action as is necessary to detain the spread of and remove the hazardous material in accordance with all environmental laws.

(c)     Tenant will immediately notify Landlord and provide copies upon receipt of all written complaints, claims, citations, demands, inquiries, reports, or notices Tenant receives relating to the condition of the Demised Premises or compliance with environmental laws. Tenant will promptly cure and have dismissed with prejudice any of those actions and proceedings to the satisfaction of landlord. Tenant will keep the Demised Premises free of any lien imposed pursuant to any environmental laws.

(d)     Landlord will have the right at all reasonable times and from time to time to conduct environmental audits of the Demised Premises, and Tenant will cooperate in the conduct of those audits. The audits will be conducted by a consultant of Landlord's choosing; each such audit shall be paid for by Landlord, provided that if any such audit reveals that Tenant's activities has caused a release of hazardous material in violation of environmental laws or resulted in a violation of any of the warranties, representations, or covenants contained in this Article, the fees and expenses of such consultant will be borne by Tenant and will be paid as additional rent under this Lease within seven (7) days after demand by Landlord.

(e)     If Tenant fails to comply with any of the foregoing warranties, representations, and covenants, Landlord may cause the removal (or other cleanup acceptable to Landlord) of any hazardous material from the Demised Premises. The costs of hazardous material removal and any other cleanup (including transportation and storage costs) will be additional rent under this Lease, whether or not a court has ordered the cleanup (unless the hazardous material was released or disposed of at or in the Demised Premises prior to the Commencement Date or was introduced to the Demised Premises by Landlord, in which event such costs will be borne by Landlord), and those costs will become due and payable on demand by Landlord. Tenant will give Landlord, its agents, and employee's reasonable access to the Demised Premises to remove or otherwise clean up any hazardous material required to be removed by this Lease or the environmental laws. Landlord, however, has no affirmative obligation to remove or otherwise clean up any hazardous material, and this Lease will not be construed as creating any such obligation.





16

(f)     Tenant agrees to indemnify, defend (with counsel reasonably acceptable to landlord and at Tenant's sole cost), and hold Landlord and Landlord's affiliates, shareholders, directors, officers, employees, and agents free and harmless from and against all losses, liabilities, obligations, penalties, claims. litigation, demands, defenses, costs, judgments, suits, proceedings, damages (including consequential damages), disbursements, or expenses of any kind (including attorneys' and experts' fees and expenses and fees and expenses incurred in investigating, defending, or prosecuting any litigation, claim, or proceeding) that may at any time be imposed upon, incurred by, asserted, or awarded against Landlord or any of them in connection with or arising from or out of:

     (i)     any hazardous material on, in, under, or affecting all or any portion of the Demised Premises (other than hazardous materials located in the Demised Premises on the date hereof);

     (ii)    any misrepresentation, inaccuracy, or breach of any warranty, covenant, or agreement contained or referred to in this Article;

     (iii)   any violation, or claim of violation by Tenant of any environmental law; or

     (iv)    the imposition of any lien for the recovery of any costs for environmental cleanup or other response costs relating to the release or threatened release of any hazardous material other than any hazardous material which was in, on, under or affecting the Demised Premises prior to the Commencement Date or which was introduced to the Demised Premises by Landlord.

This indemnification is the personal obligation of Tenant and will survive the termination or expiration of the term of this Lease. Tenant, its successors, and assigns waive, release, and agree not to make any claim or bring any cost recovery action against Landlord under CERCLA, as that term is defined in Section 55(g), or any state equivalent or any similar law now existing or enacted after this date. To the extent that Landlord is strictly liable under any such law, regulation, ordinance, or requirement, Tenant's obligation to Landlord under this indemnify will also be without regard to fault on the part of Tenant with respect to the violation or condition that results in liability to Landlord (unless Landlord's liability resulted from Landlord's activities at the Demised Premises).

(g)     For purposes of this Lease, "hazardous materials" means:

     (i)     "hazardous substances" or "toxic substances" as those terms are defined by the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601, et seq., or the Hazardous Material Transportation Act, 49 U.S.C. § 1801, et seq., both as amended to and after this date;

     (ii)    "hazardous wastes", as that term is defined by the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901, et seq., as amended to and after this date; 



  (iii) any pollutant or contaminant or hazardous, dangerous, or toxic chemicals, materials, or substances within the meaning of any other applicable federal, state, or local law, regulation, ordinance, or requirement (including consent decrees and administrative orders) relating to or imposing liability or standards of conduct concerning any hazardous, toxic, or dangerous waste substance or material, all as amended to and after this date;

  (iv) crude oil or any fraction of it that is liquid at standard conditions of temperature and pressure (60 degrees Fahrenheit and 14.7 pounds per square inch absolute);

  (v) any radioactive material, including any source, special nuclear, or by-product material as defined at 42 U.S.C. § 2011, et seq., as amended to and after this date;

  (vi) asbestos in any form or condition;

  (vii) polychlorinated biphenyls (PCB's) or substances or compounds containing PCB's; and

  (viii) mold, mildew or fungus.

 (h) Tenant, at its sole cost and expense, will comply with:

   1. all federal, state, and municipal laws, ordinances, notices, orders, rules, regulations, and requirements;

   2. any requirements of the National Board of Fire Underwriters or any other body exercising similar functions; and

   3. the requirements of all public liability, fire, and other policies of insurance covering the Demised Premises relating to the treatment, production, storage, handling, transfer, processing, transporting, use, disposal, and release of hazardous substances, toxic, radioactive matter.

## 56. Indemnification.

  Tenant shall indemnify, defend and hold Landlord harmless from and against any and all liabilities, obligations, damages, penalties, claims, costs, charges and expenses (including, without limitation, reasonable attorney's fees, which may be imposed upon or incurred or asserted against Landlord by reason of any of the following occurring during term of this Lease or while Tenant is in possession of the Demised Premises (and this provision shall survive the expiration or earlier termination of this Lease):

  (a) Any work or thing done by Tenant, or any agent, employee, licensee or invitee of Tenant, in or about the Demised Premises or any appurtenances thereto or any part thereof;



18

(b)     any use, non-use-use, possession, occupation, alteration, operation, maintenance or management of the Demised Premises or any appurtenances thereto or any part thereof;

(c)     all fines, suits, proceedings, claims, demands and actions of any kind or nature whatsoever brought by anyone whomsoever arising out of Tenant's use and occupancy of the said premises or any appurtenances thereto or any part thereof;

(d)     any act, omission or negligence of Tenant or any agent, contractor, employee, licensee or invitee of Tenant;

(e)     any accident, injury, or damage to any person or property occurring in, on or about the Demised Premises or any appurtenances thereto or any part thereof, unless resulting from the gross negligence of Landlord; or

(f)     any breach, violation or non-performance of any covenant, condition or agreement in this Lease set forth and contained on part of Tenant to be fulfilled, kept, observed and performed.

57.     Liens.

(a)     Tenant shall not suffer or permit, during the term hereby granted, any mechanic's or other liens for work, labor services or materials rendered, furnished to or for the account of the Tenant upon or in connection with the Demised Premises or to any portion thereof or to any improvements erected or to be erected therein.

(b)     Any mechanic's liens placed on the Demised Premises relating or pertaining to work performed or allegedly performed with respect to the Demised Premises by or with the consent of Tenant or anyone claiming by, through or under Tenant must be paid, removed or bonded by Tenant within thirty (30) days of the filing thereof. Landlord may in its sole discretion extend such thirty (30) day period. In the event of failure to timely remove such lien or liens Landlord may do any or all of the following: (i) terminate this Lease on five (5) days written notice to Tenant; and/or (ii) remove the lien at the cost of Tenant. The cost of removal, including legal fees shall be additional rent and may be deducted from Tenant's security deposit and/or may be the subject of any action or nonpayment proceeding.

58.     Landlord's Right of Self Help.

(a)     If Tenant shall default in the observance or performance of any term or covenant on its part to be observed or performed under or by virtue of any of the terms, conditions or provisions of this Lease, or if Landlord for any reason whatsoever in its reasonable discretion becomes dissatisfied with the state of repair, or maintenance, by Tenant, of the Demised Premises, may, but shall not be required, to remedy such default after ten (10) day's notice, if Tenant has not corrected or commenced in good faith, substantial efforts to correct such default. In the event of an emergency reasonably determined by landlord to exist, Landlord may, but shall not be required, to remedy such default without prior notice. Any such action taken or monies expended by Landlord shall be deemed for the account of Tenant shall pay and/or reimburse Landlord for all amounts so expended within seven (7) days of being presented with a bill or receipt therefore, all such amount constituting additional rents hereunder.

19

59. Miscellaneous.

(a) If any of the provisions of this Lease, or the application thereof to any person or circumstances, shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such provision or provisions to persons or circumstances other than those as to whom or which it is held invalid or unenforceable, shall not be affected thereby, and every provision of this Lease shall be valid and enforceable to the fullest extent permitted by law.

(b) This Lease shall be governed in all respects by the laws of the State of New York.

(c) If, in connection with obtaining financing for the Building, a bank, insurance company or other lending institution shall request reasonable modifications in this Lease as a condition to such financing, Tenant will not unreasonably withhold, delay or defer its consent thereto, provided that such modifications do not (i) change the permitted uses hereunder, (ii) reduce the usable area of the Demised Premises, (iii) increase the monetary obligations of Tenant hereunder or (iv) increase (other than in an insubstantial manner) any other obligations of Tenant hereunder created.

(d) If Tenant shall request Landlord's consent and Landlord shall fail or refuse to give such consent, Tenant shall not be entitled to any damages for any withholding by Landlord of its consent, it being intended that Tenant's sole remedy shall be an action for specific performance or injunction, and that such remedy shall be available only in those cases where Landlord has agreed not to (or as a matter of law Landlord may not) unreasonably withhold its consent.

(e) This Lease shall not be binding upon Landlord unless and until it is signed by Landlord and a fully executed copy thereof is delivered to Tenant. If any check delivered to Landlord in payment of the security deposit or the first month's annual fixed rent does not clear, then this Lease shall be null and void.

(f) The Schedules and Exhibits annexed to this Lease shall be deemed part of this Lease with the same force and effect as if such Schedules were numbered Articles of this Lease.

(g) If the rent hereunder shall commence on any day other than the first day of a calendar month, the rent for such calendar month shall be prorated.

(h) If there shall be any conflict between the provisions of this rider and the provisions contained in the printed form to which this rider is annexed, the provisions of this rider shall govern.

(i) Any and all payments and charges to be paid by Tenant hereunder other than the rent provided to be paid in the preamble to this Lease shall be additional rent hereunder for non-payment of which Landlord shall have all of the remedies provided herein or at law for the nonpayment of rent.

(j) If any of the annual fixed rent or additional rent payable under the terms and provisions of this Lease shall be or become uncollectible, reduced or required to be refunded because of any Legal Requirement (as such term is defined in Article 40 hereof) other than a





20

Legal Requirement imposed as a result of Landlord's failure to provide services required hereunder, Tenant shall enter into such agreement(s) and take such other steps (without additional expense to Tenant) as Landlord may request and as may be legally permissible to permit Landlord to collect the maximum rents which from time to time during the continuance of such legal rent restriction may be legally permissible (and not in excess of the amounts reserved therefor under this Lease). Upon the termination of such legal rent restriction, (a) the rents shall become and thereafter be payable in accordance with the amounts reserved herein for the periods following such termination and (b) Tenant shall pay to Landlord, to the maximum extent legally permissible, an amount equal to (i) the rents which would have been paid pursuant to this Lease but for such legal rent restriction less (ii) the rents paid by Tenant during the period such legal rent restriction was in effect.

(k)     No (i) security gates, grates and the like or (ii) signs, lettering, inscriptions, announcements, displays or exhibits on or about any part of any doorways, windows and storefronts of the Demised Premises, or within the Demised Premises which are visible from outside of the Demised Premises, shall be permitted without the prior written consent of Landlord, which may be given or withheld by Landlord at Landlord's sole discretion.

(l)     Intentionally omitted.

(m)     If possession of the Demised Premises is not surrendered to Landlord within one day after the date of the expiration of the term or earlier termination of this Lease, then Tenant shall pay to Landlord, for the use and occupancy of the Demised Premises for each month and for each portion of any month during which Tenant holds over the Demised Premises after the expiration of the term or earlier termination of this Lease, a sum equal to two times the rent and additional rent which was payable per month under this Lease during the last full month of the term hereof. In addition, Tenant shall indemnify and save harmless Landlord against and from all liabilities, obligations, damages, penalties, claims, costs and expenses, including reasonable attorney's fees and disbursements, paid, suffered or incurred as a result of the failure by Tenant to surrender the Demised Premises upon the date of the expiration of the term or earlier termination of this Lease, including, without limitation, any claims made by any succeeding tenant or prospective succeeding tenant.

(n)     Intentionally omitted.

(o)     The obligations of Tenant hereunder shall be in no wise affected, impaired or excused, nor shall Landlord have any liability whatsoever to Tenant, because (i) Landlord is unable to fulfill, or is delayed in fulfilling, any of its obligations under this Lease by reason of strike, other labor trouble, governmental preemption of priorities or other controls in connection with a national or other public emergency or shortages of fuel, supplies or labor resulting therefrom, or any other cause, whether similar or dissimilar, beyond Landlord's reasonable control; or (ii) of any failure or defect in the supply, quantity or character of electricity or water furnished to the Demised Premises, by reason of any requirement, act or omission of the public utility or others serving the Building of which the Demised Premises form a part with electric energy, steam, oil, gas or water, or for any other reason whether similar or dissimilar, beyond Landlord's reasonable control.

Active 20030223v3



(p)    If Tenant shall fail to pay any payment of annual fixed rent, additional rent or other charges when due and payable hereunder, Tenant shall pay interest on such late payment from its due date to the date paid at the rate which is the lesser of one and one-half percent per month and the maximum rate of interest permitted under New York State law.

(q)    If Tenant shall be in default under this Lease, all attorney's fees and all other reasonable costs and expenses incurred by Landlord in enforcing Landlord's rights hereunder or in collecting any rent or additional rent hereunder shall be additional rent hereunder and shall be payable by Tenant within five days after notice from Landlord, provided that if either party commences any action or proceeding relating to this Lease or the Demised Premises the prevailing party will be entitled to recover from the losing party all reasonable costs and expenses (including, without limitation, reasonable attorneys' fees) incurred by the prevailing party in such action or proceeding.

(r)    In no event will Landlord be liable to Tenant hereunder for any consequential, indirect, or punitive damages or lost profits.

(s)    No modification, amendment, extension, discharge, termination or waiver of any provision of this Lease, nor consent to any departure by Tenant therefrom, shall in any event be effective unless the same shall be in a writing signed by the party against whom enforcement is sought, and then such waiver or consent shall be effective only in the specific instance, and for the purpose, for which given. Except as otherwise expressly provided herein, no notice to or demand on Tenant shall entitle Tenant to any other or future notice or demand in the same, similar or other circumstances.

(t)    Neither any failure nor any delay on the part of Landlord in insisting upon strict performance of any term, condition, covenant or agreement, or exercising any right, power, remedy or privilege hereunder, shall operate as or constitute a waiver thereof, nor shall a single or partial exercise thereof preclude any other future exercise, or the exercise of any other right, power, remedy or privilege. In particular, and not by way of limitation, by accepting payment after the due date of any amount payable under this Lease, Landlord shall not be deemed to have waived any right either to require prompt payment when due of all other amounts due under this Lease, or to declare an event of default for failure to effect prompt payment of any such other amount.

(u)    Acceptance of any check for rent or additional rent from any person or entity other than Tenant shall not be deemed a consent by Landlord to an assignment or sublease to such payor or any other right of occupancy in favor of such payor.

(v)    Tenant shall arrange, at its cost and expense, for extermination service by a reputable licensed exterminator (not less frequently than once every three months) so that the Demised Premises shall be free from insects, rats, and other vermin and rodents at all times.

(w)    Tenant hereby represents and warrants to Landlord that neither Tenant nor any shareholder, partner or member of Tenant nor any owner of a direct or indirect interest in Tenant (i) is listed on any Government Lists (as defined below), (ii) is a person who has been determined by competent authority to be subject to the prohibitions contained in Presidential

Executive Order No. 13224 (Sept. 23, 2001) or any other similar prohibitions contained in the rules and regulations of OFAC (as defined below) or in any enabling legislation or other Presidential Executive Orders in respect thereof, (iii) has been previously indicted for or convicted of any felony involving a crime or crimes of moral turpitude or for any Patriot Act Offense (as defined below), or (d) is currently under investigation by any governmental authority for alleged criminal activity. For purposes hereof, the term *"Patriot Act Offense"* means any violation of the criminal laws of the United States of America or of any of the several states, or that would be a criminal violation if committed within the jurisdiction of the United States of America or any of the several states, relating to terrorism or the laundering of monetary instruments, including any offense under (1) the criminal laws against terrorism; (2) the criminal laws against money laundering, (3) the Bank Secrecy Act, as amended, (4) the Money Laundering Control Act of 1986, as amended, or the (5) the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT) Act of 2001, as the same may be amended. "Patriot Act Offense" also includes the crimes of conspiracy to commit, or aiding and abetting another to commit, a Patriot Act Offense. For purposes hereof, the term "Government Lists" means (i) the Specially Designated Nationals and Blocked Persons Lists maintained by Office of Foreign Assets Control *("OFAC")*, (ii) any other list of terrorists, terrorist organizations or narcotics traffickers maintained pursuant to any of the Rules and Regulations of OFAC that is now included in "Governmental Lists", or (iii) any similar lists maintained by the United States Department of State, the United States Department of Commerce or any other government authority or pursuant to any Executive Order of the President of the United States of America is included in "Governmental Lists".

(x)     Landlord and its agents, representatives and contractors, including utility personnel, shall have the right to have access or to pass through the tenant's Demised Premises for all repairs and access to all areas of the Building during normal business hours. Under no circumstances shall the tenant obstruct the Landlord's and such other personnel access to the Demised Premises. The Landlord shall give the Tenant reasonable notice of entry.

60.     Addendum to Article 3.

(a)     Supplementing the provisions of Article 3 hereof, the following conditions shall apply to making any alterations, additions, improvements or installations to the Demised Premises (hereinafter called "Tenant's Changes"):

(i)     Tenant shall pay Landlord, as additional rent, promptly upon being billed therefor, Landlord's reasonable actual, out of pocket costs and expenses, if any, in reviewing Tenant's plans and specifications, (including, without limitation, the fee of any architect, engineer or attorney employed by Landlord or its mortgagee) provided, however, that such charge shall not be applicable to Tenant's Changes which are solely repairs and/or decorative, (i.e., painting, wall covering, floor covering, and installation of furniture and fixtures and kitchen equipment); Tenant shall have no obligation to make any payment under this clause (i) with respect to Tenant's initial work to the Demised Premises provided that Tenant's initial work does not consist of any structural work;

     (ii)     prior to the commencement of any substantial Tenant's Changes, Tenant shall either frost or cover the exterior windows of the Demised Premises in a manner satisfactory to Landlord so as to maintain the appearance of the exterior of the Building; and

     (iii)    Tenant agrees that Tenant's Changes will be performed with the least possible disturbance to the structural and mechanical parts of the Building.

  (b)    Tenant's initial work will include replacement of the front window.

## 61. Addendum to Article 6.

Supplementing the provisions of Article 6 hereof, Tenant shall give prompt notice to Landlord of any notice it receives of the violation of any law or requirement of any public authority with respect to the Demised Premises or the use or occupation thereof. Tenant, at its sole cost and expense, shall (i) procure, comply with and thereafter maintain all necessary licenses, permits, certificates and other permissions required from time to time by any governmental authority having jurisdiction over the Demised Premises, for the proper and lawful operation of Tenant's business in the Demised Premises and the use thereof or which from time to time may become or are necessary with respect to any alteration, repair or improvement of the Demised Premises, (ii) submit copies of all such licenses, permits and certificates to Landlord, for its inspection, not later than the commencement date of the term of this Lease if available, but in any event prior to Tenant opening the Demised Premises for the conduct of business, and (iii) submit copies of new or renewal licenses, permits and certificates within ten (10) days after written request from Landlord.

## 62. Addendum to Article 9.

All references in Article 9 to rent shall mean rent and additional rent.

## 63. Addendum to Article 13.

Tenant shall permit Landlord to erect, use, maintain, replace and repair pipes, ducts, cables, conduits, electrical closets, equipment for the Building, plumbing, vents and wires in, to and through the Demised Premises as and to the extent that the same may be necessary for the proper operation and maintenance of the Building. Any work done will not entitle Tenant to a rent abatement and will not be considered either an actual or a constructive eviction, provided Landlord uses reasonable efforts to minimize interference to Tenant's business, but the forgoing does not obligate Landlord to employ workers during overtime periods.

## 64. Addendum to Article 17.

If Tenant shall fail to pay any installment of annual fixed rent or any item of additional rent on the date that it is due under this Lease and such default remains uncured for five (5) days after written notice from Landlord, then Landlord may at any time thereafter serve a written three (3) day notice of cancellation of this Lease upon Tenant and upon the expiration of said three (3) days this Lease and the term hereof shall end and expire as fully and completely as if the expiration of such three (3) day period were the day herein definitely fixed for the end and



Active 20030223v3

expiration of this Lease and the term hereof and Tenant shall then quit and surrender the Demised Premises to Landlord but Tenant shall remain liable as hereinafter provided.

65. Addendum to Article 18.

Whether or not Landlord shall have collected any monthly deficiency as provided in clause (c) of Article 18, Landlord shall be entitled to recover from Tenant, and Tenant shall pay to Landlord, on demand, in lieu of any further deficiency as and for liquidated and agreed final damages, a sum equal to the amount by which the fixed annual rent, additional rent under Article 43 hereof, and all other additional rent for the period which otherwise would have constituted the unexpired portion of the term of this Lease exceeds the then fair and reasonable rental value of the Demised Premises for the same period, both discounted to present worth at three percent (3%) per annum less the aggregate amount of deficiencies theretofore collected by Landlord pursuant to the provisions of clause (c) of Article 18 for the same period; if, before presentation of proof of such liquidated damages to any court, commission or tribunal, the Demised Premises, or any part thereof, shall have been relet by Landlord for the period which otherwise would have constituted the unexpired portion of the term of this Lease, or any part thereof, the amount of rent reserved upon such reletting shall be deemed, prima facie, to be the fair and reasonable rental value of the part of the whole of the Demised Premises so relet during the term of the reletting.

66. Addendum to Article 27.

All notices to Landlord or Tenant, if mailed, shall be sent certified or registered mail, return receipt requested. Copies of all notices to Landlord shall be sent to Troutman Sanders LLP, 405 Lexington Avenue, New York, New York 10174, Attention: Will Sandler, Esq..

67. Addendum to Article 31

(a) Notwithstanding anything in this Lease to the contrary, if Tenant is not then in default under this Lease, the amount of the security deposit required pursuant to this Lease shall decrease by $50,000 to equal $200,000 after the last day of the second Lease Year, in which event such $50,000 shall be applied to the payment of annual fixed rent payable after the last day of the second Lease Year.

(b) If at any time Landlord applies all or part of the security deposit pursuant to Article 31 or this Article 67, then within 10 days after demand from Landlord, Tenant shall deposit with Landlord funds in an amount equal to the sum so applied by Landlord.

(Signatures on following page)

Active 20030223v3

TENANT:

8 W 58 ST HOSPITALITY LLC

By: _____
    Name:
    Title:


LANDLORD:

LAWRENCE FRIEDLAND

ESTATE OF MELVIN FRIEDLAND

By: _____
    Name:   ERIC FRIEDLAND
    Title:    EXECUTOR

26

**EXHIBIT B**

## ASSIGNMENT AND ASSUMPTION OF LEASE

THE PARTIES AGREE AS FOLLOWS:

Date:       As of January 1, 2014

Assignor:   Lawrence Friedland and Eric Friedland as
            Executor of the Estate of Melvin Friedland
Address:    22 East 65th Street - 5th Floor
            New York, NY 10065

Assignee:   14 East 58th LLC
Address:    c/o Larstrand Corporation,
            22 East 65th Street - 5th Floor
            New York, NY 10065

The Lease which is assigned herein is identified as follows:

Owner:      Lawrence Friedland and the Estate of Melvin Friedland
Tenant:     8 W 58 St. Hospitality LLC
Date:       As of August, 2012
Premises:   Building known as 14 East 58th Street, New York, NY

Assignor has received ten dollars ($10.00) and other good and valuable consideration for this Assignment.

Assignor assigns to Assignee all of Assignor's right, title and interest as Owner in the Lease.

Assignee assumes all obligations of Owner under the Lease.

Assignor and Assignee have signed this Assignment as of the date at the top of the page.

ASSIGNOR

Lawrence Friedland

Eric Friedland, as Executor of the
Estate of Melvin Friedland

ASSIGNEE

14 East 58th LLC

By: _____
Eric Friedland, Manager

State of New York )
                  )ss.:
County of New York )

On the __27d__ day of __February__ in the year 2014 before me, the undersigned, personally appeared **LAWRENCE FRIEDLAND**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

[Signature and office of individual taking acknowledgment]

MORDECAI B. BRAUNSTEIN
Notary Public-State of New York
No. 02BR0397685
Qualified in New York County
My Commission Exp June 30, 2015

State of New York )
                  )ss.:
County of New York )

On the __27H__ day of __February__ in the year 2014 before me, the undersigned, personally appeared **ERIC FRIEDLAND**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

[Signature and office of individual taking acknowledgment]

MORDECAI B. BRAUNSTEIN
Notary Public-State of New York
No. 02BR0397685
Qualified in New York County
My Commission Exp June 30, 2015