1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 17-10692

4   - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   BE MY GUEST, LLC,

8

9        Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12              U.S. Bankruptcy Court

13              One Bowling Green

14              New York, NY  10004

15

16              April 27, 2017

17              3:11 PM

18

19

20

21   B E F O R E :

22   HON SEAN H. LANE

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  F. FERGUSON

1    Hearing re:  Initial Case Conference

2

3    Hearing re:  Doc. #10 Motion to Assume Leases Or Executory

4    Contracts

5

6    Hearing re:  Doc. #18 Memorandum Endorsed Order Directing

7    Principals And/Or Controlling Persons Appear At Initial Case

8    Conference

9

10   Hearing re:  Memorandum Endorsed Order Regarding Letter

11   Requesting Mr. Karam's Participation by Court Call

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

1   A P P E A R A N C E S :

2

3   TROUTMAN SANDERS LLP

4        Attorneys for 14 East 58th LLC

5        875 Third Avenue

6        New York, NY 10022

7

8   BY:  BRETT D. GOODMAN

9

10  PICK & ZABICKI LLP

11        Attorneys for the Debtor

12        369 Lexington Avenue, 12th Floor

13        New York, NY 10017

14

15  BY:  DOUGLAS J. PICK

16

17  GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP

18        Attorneys for 8 West

19        1501 Broadway

20        New York, NY 10036

21

22  BY:  KEVIN J. NASH

23

24

25

1   FOX HORAN & CAMERINI LLP

2        Attorneys for Oswoldo Karam

3        825 Third Avenue

4        New York, NY 10022

5

6   BY:  JOHN R. HORAN

7

8   UNITED STATES DEPARTMENT OF JUSTICE

9        Attorney for the U.S. Trustee

10       201 Varick Street, Room 1006

11       New York, NY 10014

12

13  BY:  PAUL SCHWAETZBERG

14

15  THE LAW OFFICE OF LAWRENCE M. GORDON

16       Attorney for Lucy Balan & Nello Balan, Individually

17       300 Garden City Plaza, Suite 450

18       Garden City, NY 11530

19

20  BY:  LAWRENCE M. GORDON

21

22  ALSO PRESENT TELEPHONICALLY:

23

24  OSWALDO KARAM

25

1                    P R O C E E D I N G S

2             THE COURT:  We are here this afternoon regarding

3   Be My Guest LLC, Chapter 11 case.  So without further ado,

4   let me get appearances from counsel and then you can bring

5   me up to speed on where we are.

6             MR. PICK:  Thank you, Judge.  Douglas Pick, Pick &

7   Zabicki, counsel to the Debtor.  And to my right, I have Mr.

8   John Horan.

9             MR. HORAN:  Counsel for Oswoldo Karam.

10             THE COURT:  All right.  Good afternoon.

11             MR. PICK:  And Mr. Lawrence Gordon.

12             MR. GORDON:  My name's Lawrence M. Gordon.  I

13   represent Lucy Balan and Nello Balan, individually.

14             THE COURT:  All right.  Good afternoon.

15             MR. PICK:  Also, we have in the court with us Lucy

16   Balan --

17             THE COURT:  Good afternoon.

18             MR. PICK:  And behind her, her father, Nello

19   Balan.

20             THE COURT:  All right.  Good afternoon.

21             MR. PICK:  On the phone we have Oswaldo Karam.

22             MR. KARAM:  Good afternoon.

23             THE COURT:  All right.  Good afternoon, sir.

24             MR. PICK:  And an interpreter.

25             THE COURT:  All right.

1            MR. KARAM:  Good afternoon, sir, Your Honor.

2            THE COURT:  All right.  And I am seeing just a few

3    more counsel.

4            MR. NASH:  Yes, Your Honor.  Kevin Nash for 8

5    West.

6            MR. GOODMAN:  Good afternoon.  Brett Goodman with

7    Trettman Sanders on behalf on the landlords, 14 East 58th,

8    LLC.

9            THE COURT:  All right.  So this hearing was

10   originally scheduled for 2:00.  It is now almost 3:15.

11   That's because there's been some discussions in the hallway,

12   and I don't know anything about those discussions other than

13   what I can see in the cameras where people are having

14   discussions in the hallway.  So you can get me up to speed

15   on where we are and what's the next logical step going

16   forward.

17           MR. PICK:  Well, Your Honor, thank you for being

18   so patient and allowing us to talk in the hallway.  In the

19   hallway, Mr. Horan and Mr. Gordan exerted substantial

20   efforts towards settling the issue.  And I give them credit

21   for all the work and the results of that effort.

22           It was my understanding that as a result of their

23   efforts, there was a deal.

24           THE COURT:  Do me a favor.  Since there's somebody

25   on the phone, make sure that that microphone is pointing

1    towards you just so you don't drop off.

2            MR. PICK:  Sure.

3            THE COURT:  All right.

4            MR. PICK:  In the hallway, it was my understanding

5    that there was a deal.  The deal was shared with Mr. Karam.

6    Mr. Karam agreed to the deal.  We started papering out the

7    terms of the deal to present to Your Honor, and then we hit

8    a snag.  And the snag involved whether or not the landlord

9    has any rights to the return of the lease.  As a result of

10   that concern, the settlement agreement that we had made in

11   the hallway has been withdrawn as a result of a belief that

12   the landlord's going to make a higher and a better bid

13   directly to 8 West 58th Street, although the lease is in our

14   name.

15           We believe that the settlement will meet the

16   standard of proof if presented to Your Honor arising about

17   the lowest level of reasonableness and in such an amount

18   that Your Honor will approve it, including the terms.  But

19   as a result of the landlord's demands, 8 West 58th Street

20   has decided to withdraw the settlement unless we now pay

21   them more money.

22           THE COURT:  All right.  Well, let me first off do

23   this.  Obviously I have a few things in front of me.  I have

24   for today what I technically have in front of me is a motion

25   to assume the lease.  There's obviously other things that

1    are in front of me in the 8 West case, and there's things

2    that have happened thus far in that case and in this case.

3    You all are having discussions which are really relating to

4    both cases and trying to reach a resolution.  Those

5    discussions are a sensible thing to do as these cases are

6    both headed towards a cliff in trail issue and order.

7           What I have to be careful is to make sure

8    everybody's comfortable discussing things with me in a way

9    that they feel like they can do so and they're comfortable

10   doing so even though I may have to decide, for example, the

11   lease motion or something else.  So I don't want to feel

12   like anybody feels like they're -- that they have no option

13   or they're uncomfortable having me hear things that deal

14   with settlement that may be hard not to do if we go any

15   further beyond your very carefully worded statement.

16          So I want to make sure that nobody has any concern

17   about that.  Obviously, there's a lot of history in the

18   case, and so all of that is perfectly fine to talk about,

19   but to the extent people start talking about things like the

20   terms of settlement before they're in front of me, I --

21   again, I'm very cautious about that.

22          So I'd like to hear anything anybody has to say

23   about that.  I'm happy to, if people are comfortable, do

24   what is best for the case if people agree what that is.  But

25   I don't want anyone to feel like they don't have an option

 1   or that this is an issue I don't take very seriously.  So

 2   let me first hear from your clients your views about that.

 3            MR. GOODMAN:  Your Honor, we're open to having a

 4   discussion with Your Honor either on the record or off the

 5   record with respect to the terms.  I think the terms of this

 6   particular case as related to 8 West 58th Street are such

 7   that they should be brought to Your Honor's attention since

 8   Your Honor has continually insisted that we make our best

 9   efforts to purge the contempt orders.  And I think we are

10   there.

11            THE COURT:  All right.  So let me hear from Mr.

12   Nash and from the landlord and then we'll figure out what we

13   can do and what we can't do and what makes sense going

14   forward.

15            MR. NASH:  Your Honor, I have absolutely no

16   concerns, but I think Mr. Pick has put the cart before the

17   horse.  The -- and I'm not going to get into the specifics,

18   but the discussions I had with Mr. Gordon was on a proposal

19   to settle this matter.  Now Mr. Gordon understood and we

20   discussed it very expressly that I would have to caucus the

21   interested parties on my side.  I didn't have the ability to

22   do that.  There's more than one party involved.

23            MR. KARAM:  (indiscernible).

24            THE COURT:  Hold on.  I can't listen to two folks

25   at the same time, so you just have to wait a second, Mr.

1    Karam.  Let me hear from Mr. Nash and I guess your counsel

2    here in the room.  So well, I'll hear from everybody who

3    needs and wants to be heard from, so don't worry about that.

4    So let me hear from Mr. Nash.

5            MR. NASH:  So we left it that I would speak to the

6    people on my side and see what their views are of what we

7    discussed.  The landlord is here.  The landlord has an

8    interest in both cases and made a proposal that I shared

9    with Mr. Gordon and Mr. Pick that is a better proposal for

10   my estate.  I am a fiduciary.  Without getting into numbers

11   --

12           THE COURT:  Let me back up for a second.  We could

13   probably spend some time talking around these issues.  Does

14   -- what's the next step?  Does it make sense to go off the

15   record --

16           MR. NASH:  Yes.

17           THE COUR:  -- and have a conversation?

18           MR. NASH:  Yes.

19           THE COURT:  All right.  So let me ask the

20   landlords' counsel if you see that as the next logical step.

21           MR. GOODMAN:  I'm happy to go off the record, Your

22   Honor.  I'm free to talk about --

23           THE COURT:  Where we are.

24           MR. GOODMAN:  -- what transpired and where we are.

25           THE COURT:  All right.

1    MR. GOODMAN:  I would just say for the record

2    before we get into that this has been a -- as everyone here

3    knows, the track of litigation between two parties that have

4    brought my client back into this case on more times than I

5    can count.  And quite honestly, we didn't create this

6    situation.  We were presented with a proposal that was made

7    to the Debtor.  And given what has transpired, we made our

8    own proposal.

9    THE COURT:  All right.

10   MR. GOODMAN:  And that's where we are.

11   THE COURT:  All right.  So as to process though, I

12   think am I right in and I'm just saying everybody thinks it

13   makes sense to go off the record and to chat, have a

14   chambers conference and see if we can make some progress to

15   bring these matters to some sort of a solution?

16   MR. GOODMAN:  With one caveat, Your Honor --

17   THE COURT:  Sure.

18   MR. GOODMAN:  -- if it's acceptable to you and to

19   the other parties, I have in house counsel for my client

20   here, and I would like them to participate in--

21   THE COURT:  They --

22   MR. GOODMAN:  -- this conference.

23   THE COURT:  Yeah, that seems perfectly

24   appropriate.

25   MR. GOODMAN:  Thank you.

1    THE COURT:  That seems perfectly -- I mean we can

2  do it here.  I don't know that other than the U.S. Trustee's

3  officers anybody here who is not -- who wouldn't be in the

4  room where it happens, the Court Hamilton.  So we could do

5  it here or we could do it inside.  So all right.  So with

6  that said, we can go -- all right.  Well, let me see.

7  Before we go off the record, anybody else want to weigh in

8  on anything else?

9    All right.  And I see the U.S. Trustee's Office is

10  here.  I asked chambers to call their office and to say

11  nothing more than we think you may have an interest in the

12  case.  They obviously pay attention to things dealing with

13  bankruptcy system and also like to know when there are cases

14  that are sort of about the integrity of the bank system.  So

15  that was always communicated to their office.  So sometimes

16  we do that and they really don't have a whole lot of idea

17  why we invited them, so.

18    So with that said, I'll just explain that there's

19  a history to this case that the U.S. Trustee's Office may or

20  may not be very familiar with.

21    MR. SCHWAETZBERG:  Paul Schwaetzberg with the U.S.

22  Trustee's Office.  I'm well aware of this, Your Honor.

23    THE COURT:  All right.  So thank you.  So but that

24  was all that was said to their office.  It was a one-line

25  sentence on the phone that you might want to come because

1    essentially this is a different case, but somewhat of a

2    sequel.  So I see someone rising wish to be heard.

3              MR. GORDON:  Your Honor, I'm here to represent Mr.

4    Karam.  I don't think he should be kept on the phone waiting

5    while we're talking.  I don't think it's necessary.

6              THE COURT:  Well, the reason why I said we might

7    be here is to the extent that we're here as opposed to my

8    chambers.  He can listen in.

9              MR. GORDON:  All right.  No, (indiscernible).

10             THE COURT:  So that may be useful.

11             MR. GORDON:  Yeah.  Thank you.

12             THE COURT:  And certainly at a certain point, if

13   we're going to do something else and maybe it makes sense to

14   cut him loose.  But we'll -- it's a point well taken.

15   So let's go off the record with that and --

16             (Whereupon these proceedings were concluded at

17   3:22 PM)

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3          I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5    Sonya Ledanski          Digitally signed by Sonya Ledanski Hyde
                             DN: cn=Sonya Ledanski Hyde,
6                            o=Veritext, ou,
     Hyde                    email=digital@veritext.com, c=US
7                            Date: 2017.05.19 13:23:09 -04'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  May 19, 2017